UNITED STATES of America,
Plaintiff,

v.

John Thomas YOUNG, Defendant.

No. 4–70–Crim. 33.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 1, 1970.

Neal Shapiro, Asst. U. S. Atty., for the United States.

Peter Lindberg, Minneapolis, Minn., for defendant.

## MEMORANDUM DECISION

LARSON, District Judge.

On January 19, 1970, an Indictment was filed against John Thomas Young for wilfully and knowingly failing to submit to induction into the Armed Forces of the United States, in violation of 50 App. U.S.C. § 462.

The defendant initially registered with Selective Service Local Board No. 121, Todd County, Long Prairie, Minnesota, in 1967. After submitting a request for an undergraduate deferment, he was classified II–S in January of 1968. As a result of financial problems, the defendant left college and was subsequently classified I–A on May 22, 1968. The defendant was later married and accepted employment at a food processing plant. On January 2, 1969, the defendant submitted a letter to the Local Board in which he expressed his wish to appeal his I–A classification. He stated that he had a wife and child, described his financial difficulties and those of his parents, and asked to be deferred as a father. Although the defendant's request came more than six months after the appeal period had expired, an appeal to the State Appeal Board was permitted. On April 19, 1969, the de-

fendant was continued in Class I–A by the Appeal Board. In a letter dated May 13, 1969, the defendant was ordered to report for induction on June 4, 1969.

On May 26 the defendant requested Selective Service Form 150, Special Form for Conscientious Objector. Pursuant to instructions from the State Headquarters of the Selective Service System, the Local Board postponed the defendant's induction in order to review his claim of conscientious objection. The Local Board was expressly instructed to determine whether or not there had been a change in status resulting from circumstances over which the registrant had no control. A courtesy interview was scheduled.

The Board received the defendant's Form 150 on June 20, 1969. In Form 150 the defendant expressed his belief in the creation of all living things by God, and his belief that a man's life is of value to God, to himself, to his family, and to other people, and that no one has a right to take another's life. He described a background of religious training and stated that if God created us He would not want us to destroy one another. The defendant concluded that he could not kill or destroy others. The Board also received letters from a friend of defendant, the principal of his high school, and the pastor of his church, Howard W. Bredeson.

On June 25, 1969, the defendant and Pastor Bredeson appeared for the courtesy interview before the Local Board. According to the Board's Report of Oral Information, the defendant stated that he wished to be classified as a conscientious objector, and the chairman of the Board asked him to present all facts, in addition to those in his file, on which he based that claim. For about fifteen minutes the defendant presented his beliefs and his objection to the taking of life. The defendant expressed some difficulty in presenting his case due to nervousness, but stated at the end of the interview that he had nothing more to present. Pastor Bredeson did not speak.

Members of the Board did not ask any questions of the defendant.

In its summary of the interview, the Board expressed its belief that the defendant was presenting mainly the viewpoints of Pastor Bredeson in the thoughts which he presented regarding war and the taking of life. The Board felt that the defendant had a vague fear of armed forces duty, based on an earlier letter in which he expressed fear of mistreatment of conscientious objectors at the induction center. The Board stated that it sensed an undercurrent of hostility toward the situation in which the registrant found himself and that he was struggling to find a way out. The Board concluded by stating in its Form 100 entry that it had "considered all evidence and determined that there was no change in circumstances beyond the defendant's control." The defendant's classification was not reopened.

The defendant later wrote to the State Director of Selective Service, expressing his belief that his classification should have been reopened and that he should have been classified as a conscientious objector. He asked the State Director to intervene and have the case reopened. The Deputy State Director requested the Local Board to forward the defendant's file to State Headquarters. The Local Board did so, and the file was returned to it on July 11, 1969, without any additional action having been taken.

The defendant was ordered to report for induction on July 28, 1969. The defendant's refusal to submit to induction led to the criminal charge against him.

At the close of the trial the defendant moved for dismissal, asserting that he had been denied due process in the appeal to the State Appeal Board in which he sought to have his I–A classification changed to a III–A fatherhood classification. Denial of due process has been found to be an appropriate defense to a criminal charge for refusal to submit to induction, even though the defendant received other classification subsequent

to the time of the claimed due process denial. United States v. Freeman, 388 F.2d 246 (C.A. 7th Cir.). While it may be argued that any denials of due process are obviated by subsequent classifications, [32 C.F.R. § 1625.11 provides:

"When the local board reopens the registrant's classification, it shall consider the new information which it has received and shall again classify the registrant in the same manner as if he had never before been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the class that he was in before his classification was reopened."],

this Court will assume that a due process denial on the appeal seeking the III–A classification would be a defense to the current criminal charge. This view is supported, at the very least, by the fact that the order to report for induction would probably never have been issued had the defendant been granted the previously sought classification.

■ Since the scope of judicial review in Selective Service cases is narrow, the opportunity for full administrative review is essential to the fair operation of the system. Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362, decided June 15, 1970; United States v. Freeman, 388 F.2d 246 (7th Cir.); Olvera v. United States, 223 F.2d 880 (5th Cir.); United States v. Turner, 421 F.2d 1251 (3rd Cir.). It is, therefore a proper judicial function at a criminal trial for failure to submit to induction to determine whether or not the defendant has been denied due process in the Selective Service System. Blalock v. United States, 247 P.2d 615 (4th Cir.). The defendant, of course, has the burden of proving that he was prejudiced by the denial of a procedural safeguard. United States v. Hedges, 297 F.Supp. 946 (D.C.1969); Fore v. United States, 395 F.2d 548, 554 (10th Cir. 1968); United States v. Spiro, 384 F.2d 159, 161 (3rd Cir. 1967).

■ The defendant's contention here is based on the number of files considered for classification by the Appeal Board during the meeting in which the disposition of defendant's appeal was made. He argues that the average amount of time spent on each file indicates that the Appeal Board could not have given the defendant's appeal consideration sufficient to comply with the traditional demands of due process. The defendant's argument is grounded on a recent decision in this District, United States v. Wallen, 315 F.Supp. 459. This Court is aware of no cases other than *Wallen* in which the average time spent by a Selective Service Appeal Board per file was found to deny a registrant due process. It is therefore on *Wallen* alone that the defendant relies in moving to dismiss.

In United States v. Wallen the defendant appealed to the State Appeal Board seeking to have his I–A classification changed to the classification for conscientious objectors. His file was "reasonably thick, containing 50 sheets of paper or more including a number of documents, letters, etc., from persons purporting to testify to his sincerity as a conscientious objector." (p. 460). The Court in *Wallen* found that the 59.-01 seconds average time spent on each file by the Appeal Board on the day Wallen's appeal was decided indicated that he was not given a meaningful appeal. The Court concluded that Wallen had been denied due process of law, necessitating dismissal of the case. The Court did not consider whether or not the defendant was in fact entitled to classification as a conscientious objector.

At the Appeal Board meeting in which the defendant in this case was continued in Class I–A, 230 registrants were classified in a meeting which lasted three hours, an average of about forty-seven seconds per file. In determining whether *Wallen* or traditional notions of due process require that this case be dismissed, however, this Court believes that

analysis of the case must go beyond mere comparison of numbers of seconds.

At the trial of this case, the Deputy State Director of Selective Service John Abrahamson, testified that the clerk of the Appeal Board prepares summaries of each file and sends copies of the summaries to Board members prior to each Appeal Board meeting. Copies of items from the files are frequently included. Members of the Board are thus given an opportunity to familiarize themselves somewhat with the claims of registrants prior to the meeting. If employed in a fair manner, this Court does not find efforts toward administrative efficiency repugnant to the demands of due process. It would be clearly impossible to require each Board member to examine every document in every file. To do so would result in needless and vast expenditures of time and energy. In order to avoid duplication of effort and the futility of having Board members page through stacks of irrelevant documents, it seems reasonable to permit the Board to employ some time-saving methods. Efforts toward efficiency seem especially appropriate in view of the benefit of retaining administration of the system by nonprofessional citizens. This Court feels that the use of such methods by the Appeal Board or its administrative employees is appropriate and is not inconsistent with 32 C.F.R. § 1626.23 *Preliminary review*:

"The appeal board will carefully check each file to determine whether all steps required by the regulations have been taken, whether the record is complete, and whether the information in the file is sufficient to enable it to determine the registrant's classification."

Even without the use of the presumption of regularity in administrative procedures (Greer v. United States, 378 F.2d 931 (5th Cir. 1967)), to eliminate any negative inferences drawn from the Appeal Board procedures, this Court believes that the holding in United States v. Wallen does not require the dismissal of this case.

When the defendant's file was forwarded to the Appeal Board, it contained approximately twenty documents. Among those documents was the defendant's Form 100 Classification Questionnaire. Both Form 100 and the outside of the cover sheet file contained entries indicating that the defendant received a II–S student deferment on January 24, 1968. The regulation under which the defendant sought a 3–A fatherhood classification contains the following provisions:

"In Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home * * *, except that a registrant who is classified in Class II–S after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for classification in Class III–A under the provisions of this paragraph." 32 C.F.R. § 1622.30(a).

"In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his wife, divorced wife, child, parent, grandparent, brother, or sister who is dependent upon him for support, * * *." 32 C.F.R. § 1622.30(b).

The file forwarded to the Appeal Board in this case thus included only a few documents relevant to the defendant's claim for a III–A classification. It contained only one document which could give any support to a claim of "extreme hardship." Since the defendant had been granted a II–S student deferment, it could be quite quickly determined that he was not entitled to the classification which he sought. For the Appeal Board the file presented a simple case, a claim which could be fairly disposed of in less than a minute.

This Court is persuaded that the facts of this case are in contrast with those of *Wallen*, which involved a file containing many documents relating to the merits of the registrant's claim of conscientious objection. While the shortness of time spent on each file by the

Appeal Board may have required dismissal in *Wallen,* it does not in this case. This Court feels compelled to conclude that the defendant was not denied due process in his appeal to the State Appeal Board. Moreover, the defendant has not demonstrated that he was prejudiced by any such denial, since the file indicates that under the regulations he was not entitled to the classification which he sought. The defendant's motion to dismiss is denied.

██ Although the issue was not raised at trial, it is important to point out that this Court finds no impropriety in the Local Board's refusal to reopen the defendant's classification following the courtesy interview. The defendant first sought reclassification as a conscientious objector *after* an order to report for induction had been mailed to him. The regulations provide that a "local board may reopen and consider anew the classification of a registrant * * * [if presented with] facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification * * *; provided, * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant has no control." 32 C.F.R. § 1625.2. Any classification following a reopening is considered a new one, and "each such classification shall be followed by the same right of appearance before the local board and same right of appeal as in the case of an original classification." 32 C.F.R. § 1625.13. Thus, there is a crucial difference between a local board's denial of a requested classification and its refusal to reopen a classification. The right to a personal appearance and the right to appeal derive from a board's decision to reopen.

While the defendant in this case was granted a courtesy interview, the Local Board's refusal to reopen his classification precluded him from making an administrative appeal. In denying a reopening, a local board may not act arbitrarily. United States v. Ransom, 223 F.2d 15, 17 (7th Cir. 1955); Olvera v. United States, 223 F.2d 880, 883 (5th Cir. 1955). If the refusal to reopen was improper, the defendant was deprived of an essential procedural right and the order to report for induction was invalid. Mulloy v. United States, 398 U.S. 410, 414–415, 90 S.Ct. 1766, 1770, 26 L.Ed.2d 362, June 15, 1970.

While at least one court has held that the mere granting of a courtesy interview to consider a post-induction-order conscientious objection claim was, in effect, a reopening, United States v. Westphal, 304 F.Supp. 951 (S.D.S.D. 1969), most courts have allowed local boards more discretion. Following the rationale of Murray v. Blatchford, 307 F.Supp. 1038 (D.R.I.1969), this Court held in United States v. Kerwin, 313 F.Supp. 781, April 24, 1970, that the extensive inquiry made by the local board at the courtesy interview into the merits of the defendant's conscientious objection claim constituted a *de facto* reopening, entitling the defendant to an administrative appeal. In *Kerwin,* the Local Board conducted a detailed interrogation of the registrant at the interview. This persistent inquiry by the Board left the inescapable impression that the Board had decided the case on the substantive merits of Kerwin's claim of conscientious objection, even though the Board simply noted on the file: "There was no change in circumstances beyond the registrant's control." (p. 782). The Court found that, in view of the Board's extensive scrutiny of the defendant's claim, the decision not to reopen was actually a decision on the merits of that claim.

In the present case the Local Board made no similar interrogation at the courtesy interview. Under the instructions of the Deputy State Director the interview had been granted to aid the Board in determining whether there had

been a change in status resulting from circumstances beyond the registrant's control. Board members did not ask questions of the registrant, but gave him a full opportunity to present his claim for conscientious objector classification. It is beyond dispute that much of the material presented by the defendant concerned the merits of his claim. But since the case involved a claim of conscientious objection, which concerned the state of the defendant's beliefs and the time at which he developed or acquired them, a determination as to whether there had been a change in status necessarily required some of the same information as that going to the merits of the claim. Further, as this Court stated in United States v. Ready, No. 4–70–Crim 32, p. 3, "a distinction must be drawn between the Board having before it and possibly *considering* the merits of the claim on the one hand, and the Board actually *deciding* on the merits on the other. The former need not result in prejudice to the registrant while the latter may well have such a result."

In this case it is apparent that the Local Board had before it the substance of the defendant's claim at the courtesy interview and that the Board recorded the impressions it received in its Report of Oral Information. However, this Court is satisfied that, even if the Board considered the merits of the defendant's claim at the courtesy interview, its decision not to reopen was based not on the merits of the claim but on a determination that there had been no change in status resulting from circumstances beyond the registrant's control.

Whenever a claim for new classification is made subsequent to the issuance of an induction order, the registrant has the burden of making a *prima facie* case that there has been a change in status due to circumstances beyond his control. Ehlert v. United States, 422 F. 2d 332, 334 (9th Cir. 1970), cert. granted, 397 U.S. 1074, 90 S.Ct. 1525, 25 L.

Ed.2d 808 (1970); Parrott v. United States, 370 F.2d 388 (9th Cir. 1966); Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968); United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968); United States v. Hedges, 297 F.Supp. 946 (S.D. I.1969) at 952–953. This requirement is intended to encourage the early assertion of claims and to promote orderly administration. If the defendant in this case is relying on the theory of late maturation or crystallization of his beliefs as constituting such a change in status [as he apparently is, since there is no other evidence to provide a different basis for asserting a change in status], then it is clear that he did not satisfy the *prima facie* burden. The statements of the registrant in the file and the summaries of the interview do not convey an impression that his beliefs suddenly matured after he had been mailed the induction order. The only items in the file which might be used in support of such a claim are the registrant's statement in his own summary of the interview that "killing did not seem to involve (him) until (he) received (his) draft notice," and his statement in a later letter to the State Director of Selective Service that "on receiving (his) draft notice (he) realized that this would put (him) in a position to kill or help kill * * *." Only the former statement, in its oral form, could have been before the Board at the interview, and even the two taken together are thin straws on which to base a claim of late maturation of beliefs.

> "An average man of average intelligence, who can read, must daily realize that he may, once he is subject to a draft call from his board due to his designated classification, be 'soon' called upon to kill." Parrott v. United States, 370 F.2d 388 (9th Cir. 1966) at p. 396.

Since there is nothing else in the file to indicate a change in the registrant's status, the Board's decision not to reopen was a proper one.

Two essential elements must be proven in order to establish the offense charged in the Indictment.

First: A valid order from the defendant's Local Board requiring him to report for and submit to induction into the Armed Forces of the United States.

Second: The defendant's unlawful, wilful, and knowing refusal to obey an order of his Local Board to report for and submit to induction into the Armed Forces of the United States.

The Court finds that there was basis in fact for the defendant's classification and that the Government has proven the two elements of the offense beyond a reasonable doubt, and therefore finds the defendant guilty of the offense charged in the Indictment.