**Richard H. SLETTEHAUGH, Plaintiff,**

v.

**Curtis W. TARR, Director of Selective Service of the United States; Colonel Knight, as Director of Selective Service of the State of Minnesota; and John Doe and Mary Doe and Richard Roe and Mary Roe, as members of the Selective Service Board No. 49—Panel E of Hennepin County, whose true names and identities are unknown, Defendants.**

**No. 4–70 Civ. 512.**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 19, 1971.

Johnson & Eastlund by Mark T. Solstad, Minneapolis, Minn., for plaintiff.

Robert G. Renner, U. S. Atty. by Stephen G. Palmer, Asst. U. S. Atty., for defendants.

NEVILLE, District Judge.

Plaintiff's complaint in the above case seeks injunctive relief against his local Selective Service Board No. 49 and higher officials of the Selective Service System. He was classified I–A on July 30, 1970 after a series of prior II–S (student) deferments. His request for a personal appearance before the Local Board was granted and he perfected an appeal from a denial of his request for a III–A hardship classification. The appeal board on October 26, 1970 affirmed and continued plaintiff's I–A classification. Shortly thereafter plaintiff was ordered to report for induction on November 25, 1970. On November 24, 1970, the day prior to his induction date, this court entered a temporary restraining order against defendants prohibiting them from inducting plaintiff and set the case down for hearing on the question of a preliminary injunction.

Plaintiff asserts that he has been denied due process of law in that he was not accorded meaningful procedural rights in connection with his claim for a hardship deferment both on his personal appearance before the Local Board No. 49 (Panel E) or on his appeal to the Minnesota Appeal Board. He also contends that events subsequent to receipt of his induction order have led him to crystallize his views, culminating in his decision that he is a conscientious objector and pursuant to which, on November 23, 1970 after the date of the issuance of his induction order, he filed a completed conscientious objector Form #150 with Local Board No. 49.

Defendants contend:

(1) This court lacks jurisdiction under 50 App. U.S.C. § 460(b) (3), which prohibits judicial review in any civil action of the classification or processing of any registrant by Local or Appeal Boards, except to inquire into the question of jurisdiction "only when there is no basis in fact for the classification assigned to such registrant."

(2) The classification of III–A for hardship in any event is a highly discretionary judgment vested in the Local Board and is thus not a matter for review by any court under Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).

(3) Plaintiff's attempt, after receiving his induction notice to qualify as a conscientious objector is abortive in view of 32 C.F.R. 1625.2 permitting post-induction order reconsideration by a Local Board only if an event which subsequently has occurred was beyond applicant's control, citing this court's prior decision of United States v. Lee, 315 F.Supp. 422 (D.Minn.1970), which refused to follow the theory of "late crystallization" of a conscientious objection belief after being ordered for induction.

(4) Plaintiff's claim of denial of procedural due process is without merit despite this court's decision in United States v. Wallen, 315 F.Supp. 459 (D. Minn.1970).

Plaintiff's Selective Service File comprises some 103 documents. These reveal (and are supplemented by a stipulation between counsel) that subsequent to the initial registration with his local board on November 2, 1964, he received a number of II–S deferments. He first applied for a hardship deferment on the ground that his employer Allmetal Sales Company would be required to close its business were plaintiff to be drafted. Later he applied for a hardship deferment on the basis of his wife's pregnancy and expectant child (actually born November 13, 1970). At his appearance before his local board on July 30, 1970 he presented in support of his hardship claim some 22 documents, relating for the most part to the claimed financial difficulties which his induction would engender, particularly after the birth of his child when his wife would be unable no longer to work. The hearing lasted 10 minutes, and a note from the Board chairman in the file states that plaintiff was "informed this personal appearance was his and he could present any new information he had * * * we would review the material later and notify him by mail * * * we would not be able to go over the new documents in such a short time [with] * * * 22 new documents to review". The night of this meeting, according to the Board minutes which were received in evidence by stipulation, the Board classified 329 registrants and had 8 or 9 personal appearances.

From an adverse decision of the Board, plaintiff appealed to the Minnesota Appeal Board. It was stipulated between counsel:

"* * * the said Appeal Board met for a period of four (4) hours, forty-five (45) minutes, and considered two hundred sixty-two (262) cases;

that there are no records and no testimony available or in existence as to the amount of time spent by the Appeal Board on any particular case considered on October 26, 1970."

Mathematics demonstrates that the meeting lasted a total of 285 minutes, and assuming no time for approving minutes of prior meetings and other administrative matters and no "break" for coffee or otherwise, each case on the average received the Board's attention for 1 minute and 4 seconds. Considering that the plaintiff's file contains 103 documents, 22 of which related specifically to his hardship claim, it is obvious that the Board at best had to give but very cursory consideration to plaintiff's case unless it took more than the average time—in which case other appeals obviously received less consideration. The government presented evidence concerning the practice that the Appeal Board clerk some two weeks or more before the regular monthly meetings, selects and copies the relevant and pertinent documents in the appellant's file and mails the same to each Board member well in advance of the meeting. Unfortunately these summaries are destroyed following the meeting, and thus the summary in plaintiff's case could not be produced in this case in evidence. The testimony of the deputy director of the Minnesota Selective Service Board, Major John Abrahamson, is that instructions to the Clerk are to act in a ministerial manner and he or she is enjoined from editorializing and excerpting or condensing documents.

This court is on record in the case of United States v. Wallen, 315 F.Supp. 459 (D.Minn.1970), as holding that a procedure such as was followed by the Appeal Board in the case at bar constitutes a denial of due process. The evidence in *Wallen* was uncontroverted that the Appeal Board considered and acted upon 122 cases in a period of two hours, an average of 59.01 seconds per case. The file in that case, a conscientious objector

claim, consisted of some 50 sheets of paper. This court in *Wallen* stated:

"There is of course no evidence as to how much actual time was spent on defendant's appeal. To the extent that more than 59.01 seconds was spent, less was of course spent on the other cases. The government called the Deputy State Director of Selective Service as a witness. He testified that he is familiar with appeals and appeal procedure; that a résumé or summary of all appeal files and appealed cases is made by the appeal board's clerk and delivered to each member of the board in advance of the meeting. The file itself is said to be available to members of the Appeal Board on request. After the meeting, the résumé is destroyed and thus the résumé of this defendant's case is not available and could not be inspected by the court or counsel. The government calls attention to the presumption of regularity in governmental procedures. Greer v. United States, 378 F.2d 931 (5th Cir. 1967)." 315 F.Supp. at 460.

"It does not require lengthy argument to this court to convince that a 59 second appeal is not a meaningful appeal proceeding. It is almost a routine 'rubber stamp' operation. It is a hearing or meeting at which, under the present regulations, defendant is not entitled to be present. It was in its final analysis the way it was obviously handled in this case, in reality but an appeal to the clerk of the appeals board only; for he or she is the one who makes the résumé, who selects the matters to be emphasized, and who omits what he or she may consider immaterial matters.

The question then really is whether where the law provides an appeal, it is necessary that the appeal be adequate and provide a reasonable opportunity for review. * * * Such an appeal does not afford defendant the rights which Congress must have intended he would have as a Selective Service registrant when it provided for an appeal

and a review by a five member appeal board, generally comprised of prominent civilian citizens selected from a cross-section of the community. The proceeding is offensive to the concept of due process and the indictment in defendant's case should be dismissed for failure of the appeal board to have afforded defendant meaningful rights as guaranteed under the due process clause of the Fifth Amendment and Fourteenth Amendment. The court is not unaware that the Appeal Board is comprised of unselfish, loyal, volunteer citizens who are doing a patriotic service and does not mean to impugn their integrity or high purpose. Nevertheless the above result seems inescapable. 315 F.Supp. at 461.

"In those situations where a registrant has been entitled to a hearing pursuant to the regulations the Supreme Court has held that such hearing must be a meaningful one and 'no sham substitute will meet this requirement.' United States v. Nugent, 346 U.S. 1, 7, 73 S.Ct. 991, 995, 97 L. Ed. 1417 (1953). An examination of the regulations will lend credence to this view.

32 C.F.R. § 1604.22 provides in part:

"* * * If the number of appeals sent to the board becomes too great for the board to handle without undue delay, additional panels of five members similarly constituted shall be appointed to the board by the President * * *'

Implicit within this regulation is the desire for a fair and deliberate review of each registrant's appeal and when such becomes impossible due to a large number of appeals the solution is not to 'rubber-stamp' all of the appeals without any meaningful consideration but rather to utilize the above regulation in obtaining additional panels to ease the burden." 315 F.Supp. at 461.

The case at bar is squarely within the *Wallen* language above. This court, be-

fore writing this memorandum opinion, spent nearly one hour just in reading the 103 papers contained in this plaintiff's Selective Service File, and thereafter made subsequent references thereto. How a Board of Appeals could consider this file in one minute and four seconds and give it meaningful consideration is beyond the ken of this court. There is, of course, no evidence one way or the other as to whether more time than one minute and four seconds was spent on this particular file, but mass consideration of 262 files in the limited time of the Board meeting is bound to result in superficial and not meaningful consideration of some or most of the cases, and it is as logical to presume that plaintiff's case received the average time or less as it is to assume it received more.

It is possible, of course, in a case for instance involving claimed fatherhood, or certain strategic employment, that a case can be considered peremptorily; either the registrant is or is not a father or there is an approved list of essential industries and positions held therein. Such cannot possibly be the rationale, however, where the issue is conscientious objector or hardship involving numerous factors and substantial evidence. This court is not unaware that even members of this District Court do not agree with this court's views. See United States v. Young, 324 F.Supp. 69 (D.Minn. 4–70 Cr. 33, October 1, 1970). Though the *Young* case possibly can be distinguished on the ground that it involved a requested fatherhood deferment, a peremptory decision, and not involving a thick file, still its language augurs contrary to this court's views.

In the view this court takes relative to the fact that plaintiff was not accorded procedural due process on his appeal, the question comes down to whether this constitutes acting in a "blatantly lawless" manner within the meaning of Oestereich v. Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). It

seems to this court that it does and thus this court has jurisdiction to intervene and order defendant's induction order cancelled until he has been afforded meaningful rights on an appeal. This court does not mean to opine on the merits of plaintiff's hardship contentions, but merely to hold that before he can be permanently classified I–A and ordered to be inducted, he is entitled under principles of due process to a meaningful, thoughtful review and consideration by the Appeal Board which Congress set up for just such purpose.

This view of the case renders unnecessary a decision on the question of whether the *Wallen* principle if applied to the hearing before the Local Board would result in lack of procedural due process, though this court does not believe under the facts of this case that any constitutional defect can be detected therein; nor is it necessary to pass on the effect, if any, of plaintiff's late post-induction-order filing of a conscientious objector claim, though this court's opinion in United States v. Lee, 315 F. Supp. 422 (D.Minn.1970), expresses its contrary views to such an attempt.

A separate order granting an injunction has been entered.