**UNITED STATES of America,**
**Plaintiff,**

v.

**Kjeld-Oluf Schwabe HANSEN,**
**Defendant.**

**No. 4–69 CR. 42.**

United States District Court,
D. Minnesota,
Fourth Division.

June 4, 1971.

of sincerity from the Local Board or the hearing officer would create serious possibilities of abuse. 280 F.2d at 814.

Robert G. Renner, U. S. Atty., by J. Earl Cudd, Asst. U. S. Atty., for plaintiff.

Levitt, Palmer, Bowen, Bearmon, by Lee Bearmon, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

The defendant was born in Denmark, September 28, 1944 but having resided with his parents in Brainerd, Minnesota for the requisite time, he qualified as a resident alien subject to induction into the Armed Forces of the United States. On December 6, 1963 he was notified of his duty to register by Local Board No. 18, Crow Wing County, Minnesota. On his registration form, returned to the local board on December 10, 1963, defendant indicated that he suffered from rupture, which in his opinion disqualified him from service in the Armed Forces. Notwithstanding this notice, the local board, on January 15, 1964, classified defendant I–A. No appeal was taken from this original classification. Notice of classification review together with a current information questionnaire were mailed to defendant on November 13, 1964. Under Series VII, "physical condition," defendant again indicated that he suffered from a hernia.[1] At about the time this questionnaire was returned to the Board, defendant arranged to have a private physician, Dr. Maurice Meller, forward to the Board, the results of a medical examination conducted on

---

1. Chapter 2 Army Regulations 40–501 simply states that, "hernia other than small asymptomatic umbilical or hiatal," shall be cause for rejection from service in the Armed Forces. Hernia is elsewhere defined as, "[t]he protrusion of a loop or knuckle of an organ or tissue through an abdominal opening," Dorlands Medical Dictionary, (24th ed.) ; *accord* Black's Law Dictionary (4th ed. 1968). "Ordinarily a hernia, or rupture, which is a synonymous term, involves the extrusion of one or more of the abdominal viscera through an abnormal opening or the enlargement of a normal opening in the abdominal wall." 5 Am.Jur. Proof of Facts, Hernia, at 700.

November 19, 1964. Defendant did not specifically request that he be given a so-called medical interview, and on December 15, 1964 the determination was made not to reopen defendant's classification. On March 19, 1965 the local board ordered him to report for a pre-induction army physical.[2] On April 27, 1965, defendant was examined at the induction station in Minneapolis, and within a few days a statement of acceptability for induction was returned to the local board. On June 15, defendant was ordered to report for induction on June 30, 1965. This order was stayed pending re-examination at the Minneapolis induction station on June 30, 1965.[3] On July 2, 1965, it was determined that defendant was medically acceptable, and on July 14 he was ordered to report for induction on August 9, 1965.

Continuity in the processing of defendant's disability claim was interrupted by his departure from the United States and return to Denmark on August 5, 1965.[4] Due to his absence from the country, defendant failed to report on August 9, and was re-classified IV–C by the local board on December 20, 1965. This second classification was appealed, but reinstated on February 19, 1966. Defendant did not return to the United States until August 24, 1966, at which time arrangements had been made for a third and final Army physical examination at which one or more private physicians on the University of Minnesota Hospital staff were called upon for consultation.[5] The examination was held on the 23rd of August, and defendant again was found acceptable. On the following day defendant was reclassified I–A by the local board, and on September 19, 1965, after granting defendant a personal appearance, the board refused to reopen his file. An appeal was taken from this third classification, but the I–A classification was reinstated and sustained by the Appeal board on October 17, 1966. On October 19, the local board issued its final order to report for induction on November 14, 1966.

Defendant is now before the court charged with failing to comply with the board's final order to report for induction. Defendant moves the court to dismiss the indictment for a number of procedural as well as jurisdictional defects alleged to invalidate the Board's order.

2. A current information questionnaire was included with board's order of March 19, which defendant returned on April 5, 1965, again indicating his belief that he suffered from hernia.

3. The delay in the induction order was occasioned by the local board's failure to forward Dr. Meller's examination report to the Minneapolis Armed Forces Entrance and Examining Station (AFEES) at the time of the original Army physical. Dr. Meller's report was forwarded for the second examination, and in addition defendant brought with him a report containing a finding of hernia by Dr. George Cardle, another private physician from Brainerd. Both examinations at the Minneapolis induction station were conducted by the same AFEES physician, Dr. Jack Schneck.

4. Defendant's return to Denmark was motivated, at least in part, by his wish to obtain certification of his medical history from several Danish medical sources. While in Denmark, defendant obtained certification of (1) his hospital admission in 1948 for strangulated hernia, and (2) his rejection from service in the Danish Army because of hernia. He also obtained additional examination reports from two private Danish physicians. All this information was forwarded to the State appeal board through defendant's attorney, Mr. Carl Erickson of Brainerd.

5. Defendant appears to have agreed to return to the United States to take the third army physical notwithstanding the government's refusal to grant him immunity from prosecution in connection with his failure to report on August 9, 1965. The file, however, contains statements by defendant and his father made subsequent to the examination, indicating disapproval of the procedures followed on the day of the examination. Specifically, defendant complained of the fact that only one private physician was consulted, and that Dr. Schneck again participated in the examination.

*Basis in Fact*

Defendant first contends that the Board's classification of I–A lacks a basis in fact.[6] He relies on Chapter 2 Army Regulation 40–501 which states, "the causes for rejection for appointment, enlistment and induction are: (h) (1) hernia other than small asymptomatic umbilical or hiatal." A number of medical examinations which were undertaken by both private and Armed Forces Entrance and Examining Station (AFEES) physicians in order determine the existence or non-existence of the alleged disability are reported in defendant's selective service file. Dr. Meller of Brainerd observed an enlarged inguinal ring and concluded that defendant suffered from a right inguinal hernia despite the absence of "true protruding". Several other private physicians observed enlarged inguinal rings without protrusion but accompanied by "striking" or "gurggling." The report of Dr. Cardle, another Brainerd physician indicates a "small indirect hernia on the right side", but later inquiry revealed that this was only an opinion and the doctor did not definitely find a hernia and there was no protrusion. Defendant also finds significance in the certification by physicians from Denmark of defendant's history of hernia without corrective surgery. One of the Danish physicians reported that "it seems certain that he [defendant] has a right side inguinal hernia, but the hernia cannot be demonstrated today."

On the other hand defendant's file reveals that he was found to be physically acceptable at each of three preinduction physical examinations conducted by the AFEES in Minneapolis. At the third examination defendant was referred by the Selective Service Board to a member of the University of Minnesota medical staff who reported that no protrusion was found, and that any movement in the inguinal canal was uniform and normal. Quite clearly the government examiners including the University of Minnesota medical examiner do form a basis in fact, despite the fact that there is dispute between them and the defendant's private doctors.[7] But this court will not sit as a super draft board nor upset the findings of the local board and the appeal board when there is some competent evidence upon which to form a basis in fact. It is not the function of the reviewing court in selective service cases to approach the matter *de novo*, nor to substitute its determination for that of the Board on the basis of what it considers to be the weight of the evidence. Defendant contends that the Board must nevertheless rest its finding of acceptability on positive rational evidence that defendant does not have a hernia. *See,* Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The court agrees, but finds such evidence in the record in the form of reports by several qualified medical experts who failed to elicit symptoms which in their opinions demonstrate the existence of the claimed physical condition. Beyond this, the court rejects defendant's suggestion that the board be required to prove a negative. If there is in fact some basis for the board's finding, that is sufficient. The defendant was given three separate and inde-

---

6. Section 4(a) of the Military Selective Service Act of 1967, 50 U.S.C.A.App. § 454(a), provides that "[n]o person shall be inducted into the Armed Forces for training and service or shall be inducted for training in the National Security Training Corps under this title, * * * until his acceptability in all respects, including his physical and mental fitness has been satisfactorily determined under standards prescribed by the secretary of Defense." *See also,* 32 C.F.R. §§ 1622.17 and 1622.44.

7. The dispute as it appears in the record, does not arise over the facts underlying the various medical opinions—i. e., defendant's medical history and the physical phenomena observed on examination. The dispute involves the significance of these facts as symptoms of hernia. The conflict results from the fact that several qualified medical experts drew different conclusions from substantially similar symptoms.

pendent medical examinations. At each the prior medical reports were available as was the information from defendant's private physicians. Defendant after the third examination was granted a personal appearance before the board and appealed his classification to the appeal board.

*Failure to Provide a Medical Interview*

■ Defendant next contends that the Board's failure to provide a medical interview prior to its order to report for a pre-induction physical contravened its own regulations, and amounted to a denial of due process.[8] Two separate issues are thus raised. The first is whether the Board substantially complied with its own regulations regarding medical interviews. In the court's opinion, the regulations need not be read to require that a medical interview be afforded every registrant making a claim of physical disqualification. Two recent decisions support the proposition that when the Board is presented with a bare

assertion of a disqualifying medical condition or physical defect, it may, consistent with its regulations, determine that the time and expense involved in a medical interview are not justified. United States v. Lloyd, 431 F.2d 160 (9th Cir. 1970); United States v. Smith, 423 F.2d 559 (9th Cir. 1970). It is reasonable to conclude that similar discretion obtains when the registrant accompanies his assertion with results from an examination by a private physician which either do not support the registrant's claim, or affirmatively indicate that the alleged disqualification does not exist. In the present case, the report by Dr. Meller contains a finding of "inguinal rings * * * enlarged," but expressly states that defendant "has never had an operation," and that "[t]here is no true protruding * * *," the latter being the usual basis for a finding of hernia according to the definition quoted in note 1 *supra*. Defendant requested no medical interview at the time this report was submitted, nor did he inquire as to what further

8. "32 CFR 1628 *Medical Interview by Local Board.*

1628.1 *Purpose of Medical Interview.* —The surgeon general of the Department of the Army shall, from time to time, prescribe or approve a list enumerating various medical conditions or physical defects that disqualify registrants for service in the Armed Forces. [See C22, AR 40–501, 2–3 (h) (1), set forth hereinabove.] A medical interview of certain registrants by the medical advisor to the local board shall be accomplished for the purpose of screening and disqualifying at the local board those registrants who have conditions or defects enumerated in the list.

1628.2 *Registrants to be given Medical Interview.*

* * * * *

(a) Whenever a registrant who is in Class I-A, Class I-A-O or Class I-O claims that he has one or more of the disqualifying medical conditions or physical defects which appear in the list described in section 1628.1, the local board *shall* order him to present himself for interview with the medical advisor to the local board at the time and place specified by the local board by the mailing to such registrant a Notice to Registrant to Appear for Medical

interview (SSS Form 219). [Emphasis added]

* * * * *

1628.3 *Duties of Medical Advisor to Local Board.*

(a) When the registrant is referred to the medical advisor to the Local Board for medical interview, the medical advisor shall make only such examination as he deems is necessary to determine whether the registrant has one or more of the disqualifying medical conditions or physical defects which appear in the list described in section 1628.1. * * *

(b) The medical advisor to the local board shall (1) give each registrant who presents himself for medical interview such examination as he deems necessary, or (2) review each affidavit of a reputable physician * * * referred to him by the local board. From such examination or review, the medical advisor to the local board shall determine whether the registrant has one or more of the disqualifying medical conditions or physical defects which appear in the list described in Section 1628.1 and shall record his findings in Section II of the Record of Induction (DD Form 47)."

steps might be taken. Under such circumstances, the board had reason to doubt the existence of the claimed disability, and in ordering defendant to report for a pre-induction physical, acted in accordance with § 1628.4(e) of the regulations. See United States v. Smith, *supra* at 561; United States v. Lloyd, *supra*, 431 F.2d at 168. The board's conduct with respect to any subsequent medical certification clearly complied with accepted procedures.[9]

■ Assuming *arguendo* however that the Board's conduct was not in complete conformity with its own regulations, the question remains whether defendant's rights were thereby infringed, or his claim otherwise prejudiced. In this regard, it is important to note that the function of the medical interview under the regulations is advisory only, and the board is not bound by the opinion of its medical advisor. If there is any protective purpose served by the medical interview procedure, it is merely to insure that the board give fair and impartial consideration to a registrant's disability claim—i. e., independent of that given by the Armed Forces examiners. Defendant's rights are infringed only if the record shows that in withholding the medical interview, the Board in effect delegated its duty to the Armed Forces examining physicians, or otherwise shirked or avoided its duty to make its quasi-judicial determination on an impartial basis. See *e. g.*, Benitez-Manrique v. Micheli, 305 F.Supp. 334, 338 (D.Puerto Rico 1969).

The evidence before the court clearly negates any such finding. Defendant's Selective Service File contains reports from a total of 10 examining physicians. Following defendant's original pre-induction examination and a subsequent re-examination by one Dr. Schneck, an AFEES physician in Minneapolis, his case was reviewed by the Deputy Commander of the Minneapolis Induction Station, who in a letter to the State Director of Selective Service System, dated May 19, 1966, (SSS No. 92) stated in part:

"* * * [I]n view of the confusing, aspects of this case, and the extreme agitation of the young man and his father, it has been arranged for Mr. Hansen to be examined at the University of Minnesota Hospitals by staff members of the surgery department should he so desire. * * * If a hernia should be found upon examination by these doctors, Mr. Hansen would be disqualified according to Ch 2 AR 40–501. If no hernia were demonstrated, he would, of course, still be qualified for induction under the same regulations.

It is felt that the above procedure would be more than fair to Mr. Hansen and would satisfy all those concerned."

On August 23, 1966, following defendant's final AFEES examination, participated in by three Armed Forces physicians, defendant was sent to the University of Minnesota Hospital and there examined by Dr. Henry Sosin, a private physician on the Hospital's staff. In his consultation report Dr. Sosin concludes:

"In accordance with the usual definition of hernia which includes protrusion of a viscus or body part through the abdominal wall, no evidence of inguinal hernia was elicited upon this examination." (SSS No. 127–sub No. 91)

Although Dr. Sosin's examination was suggested by and billed to the Armed Forces Examining and Entrance Station in Minneapolis, the results were placed

---

9. "The claimed defect must be one that has not been previously presented and evaluated by the local board medical advisor or the Armed Forces Entrance and Examining Station. If the registrant has already had his physical examination the papers submitted should be sent to the examining station for evaluation by the physicians there." Selective Service Operations Bulletin § 327(3); *see*, United States v. Smith, *supra*, 423 F.2d at 561; Vasilj v. United States, 425 F.2d 1134 (9th Cir. 1970).

in defendant's Selective Service File which was returned to the local board when it subsequently reclassified defendant I–A. These results, as well as the reports obtained by defendant from six private physicians, were all in the file when the local board, on September 19, 1966, granted defendant a personal interview concerning his disability claim. In light of this record, it is clear to the court that the Board's failure to afford defendant a medical interview prior to his pre-induction physical neither infringed his right to due process nor resulted in any prejudice to his claimed disqualification.

### Refusal to Reopen Not Prejudicial

■ Defendant contends that the Board's failure to reopen his classification in December, 1964, constituted prejudicial error. The court need not determine whether the evidence presented to the board at that time constituted a *prima facie* case for the alleged disability, which evidence had not been previously considered and was not conclusively rebutted by information already in the file. The fact is that defendant's file was reopened on two subsequent occasions in connection with his reclassification to IV–C and back to I–A. In connection with each of these reclassifications defendant was afforded the right to an appeal. The record indicates that the appeal board, at least as to the second of these appeals, gave full consideration to the very claim upon which defendant premised his right to a reopening. The record on this appeal contained that information which was before the local board at the time of its original refusal to reopen, together with several subsequent additions. Thus even if the board was in error in refusing to reopen defendant's file in December, 1964, the error does not appear to have resulted in any substantial prejudice to defendant. The cases finding prejudice from a board's failure to reopen rest upon the theory that in light of the extremely subdued judicial role in reviewing induction processing, it is essential that a

registrant receive full and complete administrative review prior to induction. *See,* Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970) ; United States v. Turner, 421 F.2d 1251 (3d Cir. 1970) ; United States v. Freeman, 388 F.2d 246 (7th Cir. 1967) ; Olvera v. United States, 223 F.2d 880 (5th Cir. 1955) ; United States v. Young, 324 F.Supp. 69 (D.Minn.1970). Here defendant's file was subsequently reopened, and defendant was afforded full administrative review of the precise claim involved in the alleged faulty refusal to reopen.

### The Appeal Board Properly Considered Defendant's Claim

■ Defendant was afforded two appeals of local board classifications prior to his final order to report for induction. The court does not believe this case falls within the doctrine announced in the conscientious objector case of United States v. Wallen, 315 F.Supp. 459 (D.Minn.1970). The relevance and significance of statements and observations contained in the medical reports are self-evident and do not require the insight or reflection necessary to evaluate a conscientious objector claim.

■ Defendant's contention that the appeal board meeting of October 17, 1966, was improperly convened is likewise without merit. The selective service regulations state that an appeal board normally will be composed of five members. 32 C.F.R. 1604.22. Attached to the government's brief in connection with this motion is an affidavit of the Deputy Director, Minnesota State Selective Service, which clearly indicates that the board which considered defendant's appeal consisted of five members. A majority of members of an appeal board constitutes a quorum for the transaction of business, 32 C.F.R. 1604.26, and defendant's selective service file indicates that a majority of three appeal board members heard his appeal on October 17.

Defendant's contention that the prosecution is somehow bound by an earlier

statement by the State Director of Selective Service is made without reference to supporting authority.[10] In ascertaining the propriety of procedures followed in this case, the court is authorized to look beyond defendant's file. See Niznik v. United States, 173 F.2d 328 (6th Cir. 1949); *cert. denied*, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733 (1949).

The registrant's various contentions are denied. A separate order has been entered.

10. In a letter from the State Director of Selective Service (SSS No. 82) to defendant, dated March 21, 1966, the appeal board was said to include six members. The names of the board members given in this communication include all those listed in the later affidavit with the unexplained addition of one Lawrence W. Binger, not mentioned in the later affidavit.