UNITED STATES of America,
Plaintiff,

v.

Patrick Allan PEACH, Defendant.

Crim. No. 73–CR–84.

United States District Court,
E. D. Wisconsin.

April 22, 1975.

Terry E. Mitchell, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Curry First, Milwaukee, Wis., for defendant.

## DECISION

JOHN W. REYNOLDS, Chief Judge.

This is a selective service case in which the defendant Patrick Peach was indicted for knowingly and wilfully failing to report for induction on July 6, 1972, in violation of 50 U.S.C.App. § 462. Jury trial was waived and the case submitted to the court for decision on briefs and stipulated facts, including defendant's selective service file and the minutes of his local board's meeting on November 11, 1971. For the reasons hereinafter given, the defendant is found not guilty.

The relevant facts concerning defendant's relationship with the Selective Service System are summarized as follows:

Defendant registered with Selective Service Local Board 60 of Racine, Wisconsin, on May 5, 1970. On August 18, 1971, the Board mailed defendant a Classification Questionnaire (SSS Form 100) which was never executed or returned by defendant. On September 21, 1971, and again on October 27, 1971, the Board wrote to defendant and requested him to complete the Classification Questionnaire and return it. Defendant made no response.

At a meeting of the Board on November 11, 1971, defendant was classified I–A by a 4–0 vote.

On January 7, 1972, the Board mailed to defendant an order to report for a physical examination (SSS Form 223) on January 24, 1972. On January 11, 1972, defendant came to the Board's office and stated that he had no intention of coming for the physical examination. After being told that if he didn't he would be placed in line for induction, he responded that he would not report for induction. Defendant did not report for the physical examination on January 24, 1972.

On February 25, 1972, the Board wrote defendant and notified him that he was under a continuing duty to report for a physical examination and directed him to report for a physical examination on March 14, 1972. Defendant did not report as directed.

On June 6, 1972, the Board mailed to defendant an Order to Report for Induction (SSS Form 252) on July 6, 1972. Defendant appeared at the Board's offices on July 5, 1972, and said that he was not going to report for induction on the next day. Defendant did not report for induction on July 6, 1972.

Defendant has raised no issue with the Government's evidence that he failed to report for induction on July 6, 1972. Instead, he has asserted the following arguments: First, that the Board denied defendant his rights to constitutional and administrative due process by failing to review or consider his file when it classified him I–A on November 11, 1971. Secondly, that the Board denied defendant due process by classifying him I–A after he failed to return the Classification Questionnaire. Finally, that the Selective Service Act is invalid because it furthered unconstitutional Presidential warmaking. This court has concluded that the Board did not render the consideration to which defendant was entitled as a matter of due process and that, therefore, both his I–A classification and the order to report for induction were invalid. No opinion is, therefore, expressed on defendant's other contentions.

At the Board meeting on November 11, 1971, at which defendant was classified I–A, a total of 975 files were "considered" by the Board in the space of two and one-half hours. Assuming that absolutely no time was spent in breaks for coffee or anything else, and that the Board concentrated solely on its job with no desultory conversation, simple arithmetic indicates that the average time per case was 9.23 seconds.

The manner in which the Board was able to process such a large number of cases in so short a time is made evident in that part of the stipulation containing the testimony of the assistant executive secretary of the Board concerning the Board's practices. The minutes of the Board's meeting on November 11, 1971, consist of a cover sheet (SSS Form 112) and 43 continuation sheets (SSS Form 112–A). Defendant's classification appears on page 19 of the continuation sheets. The registrants appearing on the cover sheet and pages 1 and 2 of the continuation sheets are referred to as "discretionary" and the remainder are termed "nondiscretionary."

Although the assistant executive secretary was present at the Board meeting on November 11, 1971, he has no independent recollection of the meeting. The stipulation does contain, however, the following general description of the Board's method of processing the so-called "nondiscretionary" registrants: Before the meeting, the Board's clerical personnel would sort the files constituting the various classifications considered to be "nondiscretionary." These classifications are (1) registrants who have completed their service and are eligible for a IV–A as a veteran, (2) registrants entering the service who get classified I–C, (3) registrants who meet the requirements for a II–S student deferment or a continuation of their II–S deferment, and (4) registrants "who present no request or evidence of qualification for classification in any other class than I–A." Before the meeting the clerical personnel would also prepare the minutes (the SSS Forms 112–A) and type

in the new classification on the registrants' Classification Questionnaires (SSS Form 100).

At the meeting, a Board member would take the previously prepared minutes and read off the registrants' names appearing in the left-hand column of the minutes to another member or a clerk. That person would indicate that the file was present on the table, thereby insuring that all the files pulled for classification were listed on the minutes.

After this process was completed, the files would be divided among the Board members who would initial the previously typed in classification on the individual registrants' Classification Questionnaires (SSS Form 100). During this phase of the Board's classification process, a file might be removed for full Board consideration, apparently on the initiative of the member who is doing the initialing.

■ Both the Selective Service System's regulations and the Fifth Amendment require a local board to give consideration to a registrant's file when it classifies him. 32 C.F.R. § 1604.56, § 1622.1(a); United States v. Shermeister, 425 F.2d 1362 (7th Cir. 1970); United States v. Weaver, 336 F.Supp. 558 (E.D.Pa.1972). See, Slettehaugh v. Tarr, 322 F.Supp. 180 (D.Minn.1971); United States v. Wallen, 315 F.Supp. 459 (D.Minn.1970). Defendant has conceded there is a presumption that a local board has properly performed its duties, and that because defendant did not return a completed Classification Questionnaire (SSS Form 100) his file would not take much time to consider. Nevertheless, defendant has argued that the Board's minutes and stipulation contain sufficient evidence, especially the fact that the average time per case is approximately nine seconds, to rebut the presumption of administrative regularity.

The Government has argued that the sole fact that the average time per case is approximately nine seconds is not sufficient to rebut the presumption of administrative regularity because most of the classifications made by the Board at the November 11, 1971, meeting were "nondiscretionary." These "nondiscretionary" classifications, according to the Government, constitute 910 of the 975 classifications. Thus, the Government argues, it was not necessary for each Board member to individually examine each of these 910 files and for the Board to vote on each file separately, but rather it was permissible for the Board members to rely on the clerical staff to inform them that, with respect to each group of "nondiscretionary" classifications, each file in the group was in order and the registrant entitled to receive the previously typed in classification.

Many of the classifications made by the Board on November 11, 1971, required very little time to decide upon and were ones where the Board could rely on its staff to ascertain what classifications the registrants were entitled to. Examples of these are classifying registrants who had completed service IV–A, granting a I–C to registrants who had entered the service and a I–D to those who had entered the Reserves, classifying registrants as IV–F, and continuing or granting initially a II–S student deferment.

■ But the Board could not allow its staff to make the decision to classify a registrant I–A (available for military service). At the November 11, 1971, meeting, 126 registrants (including defendant) received an initial I–A classification, and 133 other registrants had their classifications changed from II–S (student deferment) to I–A. Many of these registrants initially classified I–A had perhaps presented no claim for a deferment, and others who had their II–S changed to I–A had perhaps graduated and were therefore not entitled to a continuation of their II–S classification. Nevertheless, it was for the Board and not its staff to make these determinations. The Board's duty was to consider and vote on every classification, 32 C.F.R. § 1604.56, and not simply "rubber stamp" decisions made by the staff without even examining the file. The

decision to classify a registrant I–A is one of the most important ones that a local board can make, as it could lead to the grave and irreparable consequence of a registrant being inducted.

█ The fact that after a group of files had been voted on a Board member would initial the classification on the Classification Questionnaire does not cure the Board's error. Just as the Board cannot delegate its decision-making power to the clerical staff, it cannot delegate its power to one member. United States v. Jackson, 454 F.2d 821 (5th Cir. 1972).

█ The decision to classify defendant I–A was not so "nondiscretionary" that it could be delegated to the clerical staff. Defendant had a duty to execute and return the Classification Questionnaire, 32 C.F.R. § 1621.10(a), and his failure to do so constituted a felony. 32 C.F.R. §§ 1641.2(a) and 1641.7; 50 U.S.C.App. § 462(a). Thus, the Board could have referred defendant's case to the United States Attorney for prosecution. Further, the Board was not helpless because defendant did not return the Classification Questionnaire. It could have subpoenaed him, 32 C.F.R. § 1621.15, or questioned him pursuant to 32 C.F.R. § 1625.1(c), before classifying him I–A on the basis of no information.

█ Additionally, this Court will not ruminate on what the Board would likely have done if it had examined defendant's file on November 11, 1971. The fact that the Board did not consider defendant's file before voting upon his classification is what caused the deprivation of due process, and the Court has no power to pass on the merits of whether defendant should have been classified I–A. United States v. Shermeister, 425 F.2d 1362, 1363 (7th Cir. 1970).

Since defendant's classification and induction order were invalid,

It is ordered that a judgment of "not guilty" be entered in this case.