Jose Antonio BENITEZ–MANRIQUE,
Petitioner,

v.

Col. Harry P. MICHELI—Commandant Induction Center, Col. Bert Perrin—Commandant U. S. Army Southern Comand of Puerto Rico, Col. John B. Moyar—Commandant Rodríguez Army Hospital, Fort Brooke, Respondent.

Civ. 591–69.

United States District Court
D. Puerto Rico.

Nov. 6, 1969.

Olaguibeet A. Lopez-Pacheco, Hato Rey, P. R., for petitioner.

Alfred T. Ghiorzi, Sp. Asst. U. S. Atty., San Juan, P. R., for respondent.

## OPINION AND ORDER

FERNANDEZ–BADILLO, District Judge.

Petitioner, Jose Antonio Benítez-Manrique, has applied for a writ of habeas corpus directing his release from the Armed Forces of the United States on the grounds that his induction into the armed services was unlawful because the Selective Service System Local Board failed to properly handle his physical unfitness claim. Benítez was inducted into the Army on August 27, 1969 at the Armed Forces Examining and Entrance Station, Fort Brooke, San Juan, Puerto Rico.

The relevant events leading to Benítez induction are disclosed by examination of his Selective Service file submitted in evidence by stipulation of both parties and may be summarized as follows:

On November 7, 1967 Benítez registered at Local Board No. 78 and in the Classification Questionnaire (SSS Form 100) stated he was suffering from a heart condition that had required surgery of that organ.

Local Board No. 78 mailed Benítez a letter form on December 14, 1967 requesting medical certificates justifying the physical defects alleged by him. Nevertheless, just six days afterward, on December 20, 1967 the Local Board classified Benítez 1—A.

On January 25, 1968 Benítez returned to the Local Board the letter form accompanied by a medical certificate from Dr. Calixto A. Romero attesting that Benítez had been diagnosed by him as suffering from an interauricular septal defect of the heart, was referred to Dr. Charles Hufnagel at Washington, D. C., who after confirming the diagnosis, performed surgery on petitioner on June 20, 1962.

On April 23, 1969 Benítez reported for Armed Forces physical examination as ordered by the Local Board on February 26, 1969 and April 7, 1969. A statement of acceptability was mailed on May 19, 1969 informing him that he was found fully acceptable for induction into the Armed Forces.

The Local Board mailed Benítez a questionnaire on May 22, 1969 advising him to submit documentary evidence for due consideration by the Local Board if he considered himself entitled to a deferment.

Benítez returned said questionnaire on May 29, 1969 claiming he was suffering from disqualifying medical conditions, as set forth in the Army Regulations issued pursuant to 32 C.F.R., Sec. 1628.1 [1] and enclosed medical and radiological certificates stating he was suffering from dilated pulmonary arteries.

On June 3, 1969 the Local Board informed Benítez' mother that upon consideration of the medical evidence submitted by her and *considered by the Armed Forces,*[2] petitioner was fit to serve in the military.

On June 24, 1969 the Local Board sent Benítez an Order to Report for Induction (SSS Form 252) on July 22, 1969.

---

1. C–22, AR 40–501, Chapter 2, Medical Fitness Standards for Appointment, Enlistment, and Induction, Section XI, Heart and Vascular System, Paragraphs 2–19, *a* and 2–20, *b.*

2. Our emphasis here obeys to our eagerness to stress the fact that the medical evidence was not then, nor ever before or afterwards, considered by the Local Board itself.

On July 12, 1969 Benítez' mother notified the Local Board of his new address and at the same time requested a reconsideration or a hearing. To this letter the Local Board replied on July 18, 1969 granting the hearing for July 22, 1969 as an administrative grace because there was already a pending order of induction. The hearing was later cancelled by the Local Board (SSS Form No. 264) and the induction order postponed until August 13, 1969 to allow Benítez to submit the medical certificates related to the physical condition that he alleged prevented him from serving in the armed forces.

On or about August 8, 1969 Benítez submitted to the Local Board a statement as to the type of surgical operation of the heart and copy of the discharge summary by Dr. Charles Hufnagel plus a medical certificate by Dr. Ramón M. Suárez indicating that Benítez was suffering a disqualifying condition listed in C22, AR 40–501.[3]

The Minutes of Actions by Local Board state that on August 13, 1969 "the case and evidence in the file considered, the Board determines that registrant does not meet the requirements for a deferment because of his studies, as he only dedicates 7 hours per week. In regard to the medical certificates it must be the armed forces who determine the acceptability of the registrant, so, he must comply with the induction order, on August 27, 1969." This decision was reached by a 5–0 vote.

Benítez submitted to induction into the Armed Forces on August 27, 1969. On August 28, 1969 he was given orders by the Armed Forces Examining and Entrance Station—later cancelled—to report with a group of other inductees to Fort Jackson, South Carolina on August 29, 1969. Although the record shows that subsequent orders were issued by the Armed Forces Examining and Entrance Station at Puerto Rico, for Benítez alone, to report to Fort Jackson on September 1, 1969 [4] affidavit of respondent, Col. John B. Moyar, (Exhibit B of Respondents' Return) discloses that on September 2, 1969 Benítez was at Rodríguez Army Hospital, under the command of affiant, undergoing a medical examination and interview by Major Carl R. Smith.

Respondents claim (1) that this court lacks jurisdiction over the subject matter and (2) that petitioner is physically fit for induction into the Armed Forces of the United States.

In their Return to Petition for Writ of Habeas Corpus the respondents claimed as an affirmative defense that they did not know petitioner's whereabouts and that he is not, therefore, under their custody, control or command. At the hearing, however, counsel for the government argued, confining his theory to the issue that petitioner is actually under custody of the military but that the jurisdiction lies in Fort Jackson, South Carolina.[5] Looking into the matter, the court finds that the military authorities at the Armed Forces Examining and Entrance Station at Fort Brooke, Puerto

---

3. These documents were submitted by stipulation of both parties. Counsel for the government stated that he accepted that petitioner submitted some medical documents to the Local Board but the government could not deny nor affirm they were received by the Local Board. See, nevertheless, the third paragraph of the letter of August 13, 1969 sent to petitioner by the Local Board admitting that certain medical certificates had been submitted by him.

4. See Affidavit of Major Thomas B. Wilkerson, of September 3, 1969 Exhibit A of Respondents' return.

5. In effect, even though in the case of Nevarez Bengoechea v. Micheli, 295 F. Supp. 257 (D.P.R., 1969)—recently decided by this Court and also a habeas corpus proceeding attacking the legality of an induction into the Armed Forces—the defendant, Lt. Col. Harry P. Micheli, as Commanding Officer of the Armed Forces Examining and Entrance Station, happened to be also one of the Respondents in the present case, no issue was raised as to the custody of the plaintiff by the defendant or as to lack of jurisdiction by the Court.

Rico,[6] issued orders to Benítez and still retained the power to subject him to their orders and supervision. Benítez was inducted and submitted not voluntarily, but in compliance with 32 C.F.R. 1632.15 and 1632.16. As soon as he was inducted he was under the custody of the Armed Forces authorities in Puerto Rico. Certainly he was under their orders.[7] Once the other inductees ordered with Benítez to go to Fort Jackson, South Carolina, in the first orders, left Puerto Rico they may not have been any longer under the custody of respondents here, —they actually continued to be under the custody of the Armed Forces, although in a different jurisdiction under the custody of different Army officers—but petitioner, the one who was left as ordered by the Army, certainly remained and presently is under the custody of respondents. He is within the jurisdiction of the District of Puerto Rico subject to orders from the Armed Forces.

 Also the fact remains that the military authorities still claim jurisdiction over petitioner and the right to subject him to their orders and supervision, including arrest, against his will. Their orders, to which they claim he is subject, are in effect a continuing and effective assertion of custody, a power at the moment only limited because of the restraining order from this court, but a custody which, once the restraining order is removed, may at any time be made as complete as the military establishment by further order shall direct. Based on these facts, this court finds that petitioner's custody lies in respondents in

Puerto Rico; therefore, this court has jurisdiction over the subject matter.

As to the second point raised by the government in reference to petitioner's medical fitness, this Court finds that this is a matter to be looked into by the Selective Service System in compliance with the appropriate regulations and procedure.

Now the Court finds that at the initial step of the registration procedure,—in the Classification Questionnaire—petitioner raised a claim that indicated he was suffering from disqualifying medical conditions that appear in the list described in 32 C.F.R. 1628.1. The letter form of December 14, 1967 mailed by the Local Board to Benítez requesting medical certificates justifying the physical defect alleged by him indicate that the registrant raised his claim timely.

32 C.F.R. 1628.2(b) reads as follows:

*"Whenever a registrant who is in Class 1-A, Class 1-A-O, or Class 1-O claims that he has one or more of the disqualifying medical conditions or physical defects which appear in the list described in section 1628.1 the local board shall order him to present himself for interview with the medical advisor to the local board at the time and place specified by the local board by mailing to such registrant a Notice to Registrant to Appear for Medical Interview (SSS Form 219)."*

 The Local Board must follow its own regulations and grant the registrant the medical interview to which he is entitled. The Local Board in violation of

---

6. Army Regulations—AR 601–270, Armed Forces Examining and Entrance Stations, Chapter 1, Functions and Responsibilities, Paragraph 1–1, d and e—provide:

> "These are military activities established at locations designated and approved by the Assistant Secretary of Defense (Manpower and Reserve Affairs).
> The primary functions of the AFEES are to—
> \* \* \* \* \*
> d. Induct registrants allocated into the respective services.

e. Assign and ship accessions enlisted or inducted at AFEES to stations designated by the respective military service. \* \* \*"

7. See Special Orders Number 164, dated August 27, 1969 and Special Orders Number 165, dated August 28, 1969 both from the Department of the Army, referred to in Affidavit of Major Thomas B. Wilkerson, supra, and copies of which were attached thereto and made part therein.

338

its own regulations never sent registrant the SSS Form 219, neither after his first claim nor after his second claim on May 29, 1969 before he had been sent any induction order, when he claimed another disqualifying medical condition as set forth in C22, AR40–501, nor on subsequent claims.[8] An official document of the Local Board itself—Form DD–47, Record of Induction—which is a part of petitioner's Selective Service file submitted in evidence by stipulation of both parties, discloses the fact that the registrant suffered heart troubles and yet he was not referred to the Local Board medical advisor. See blank number 16, Physical Defects, items *a*, *b*, and *c*, of Form DD–47.

■ The Local Board has a duty to comply with the regulations and grant the medical interview whenever the claim of a disqualifying condition is made by the registrant.[9] The Local Board failed to comply with the regulations when it believed it could substitute the medical interview by an Armed Forces physical examination. It is not within the province of a Selective Service Local Board to delegate its functions on one of the interested parties to a proceeding before it.

■ Draft board proceedings are quasi judicial and as such must conform to the basic principles of due process of law. Gibson v. Reynolds, C.A. 8, 172 F. 2d 95, cert. den. 337 U.S. 925, 69 S.Ct. 1170, 3 L.Ed. 1733; Nevarez Bengoechea v. Micheli, *supra*. When the legislator established certain standards of pro-

cedure for the Local Board, like those related to the medical interview, he expected that they were to be carried on by the Local Board medical advisor, without any particular interest in the outcome, like an impartial tribunal. The Local Board must seek advice from the medical advisor. The registrant was entitled under the regulations to an interview by an impartial medical advisor of the Local Board; instead the Local Board sent him to physicians who represent an interested party, the Armed Forces,[10] in these procedures, in violation of the regulations. The Regulations are and should be interpreted as a safeguard of the due process standards to which the registrant is entitled. Their violation when it results prejudicial to the interests of a registrant violate the requirement of due process to which he is entitled.

The courts have long held that "failure to accord a registrant the procedural rights provided by the Regulations invalidates the action of the draft board." Knox v. United States, 200 F.2d 398, 401 (9th Cir. 1952). It is true that this case, following prior precedents, also held that "procedural irregularities or omissions which do not result in prejudice to the registrant are to be disregarded" (p. 401), but in our case petitioner was prejudicially deprived of an important step in his process of induction; that is, his indispensable right to an impartial quasi-judicial action established by law for his protection. A local Board may not capriciously deprive a registrant of such protection. This measure might

8. The subsequent claims of petitioner (August 8, 1969) about his suffering an "incomplete right bundle branch block" were backed by Dr. Ramón M. Suarez's medical certificate submitted as evidence by stipulation of the parties (see page 4, footnote 3) and they referred to a disqualifying condition covered by C–22, AR40–501, Chapter 2, Section XI, supra, Paragraph 2–18, *c* (2).

9. "When no medical advisor to the local board is available, the local board, to the extent that is is capable of doing so, shall

make the examination, review, and finding provided for in § 1628.3". 32 C.F.R., section 1628.4(a).

10. It is interesting to notice that even in a Medical Statement about petitioner, dated 2 September, 1969 prepared for the Army by Major Carl R. Smith, MC, Chief of Medicine, Rodríguez US Army Hospital, Department of the Army, it is stated of petitioner that "there is mild dyspnea on exertion, being able to run only one block". Respondents' Return, Exhibit B, Inclosure 1.

have resulted in a reclassification of petitioner. "Classification by the local board is an indispensable step in the process of induction. The registrant is entitled to have his claims considered and acted upon by these local bodies the membership of which is composed of residents of his own community. An underlying concept of the Selective Service System is that those subject to call for service in the armed forces are to be classified by their neighbors—people who are in a position to knew best their backgrounds, their situation and activities." Knox v. United States, *supra,* page 402.

Petition of Bank, 290 F.Supp. 120 (N.D.Calif.1968), cited by Respondents' counsel is not applicable here because "absence of any communication by petitioner, or anyone on his behalf, to either his local Board or the induction station as to any claim of medical disability, indicates that no notice was given or received which would require or justify a complete physical examination at the time of induction." (p. 121) Also, "[I]t appears that he was in communication with his Board * * * and made no claim or assertion concerning any disability." (p. 121). This is not the case of our petitioner. As already stated, since the beginning he gave due notice of his physical defect to the Local Board and timely made his claims of medical disability. No claim of violation of due process by the draft Board was claimed by Bank; his claim was against the induction station personnel. The situation in our case is totally dissimilar from that of *Bank.*

Thus, in view of the foregoing, this Court concludes that petitioner is under custody in this district and that it has jurisdiction over the subject matter. This Court further concludes that the petitioner was inducted into the United States Army in violation of the standards of procedural due process. Consequently, the writ of habeas corpus is granted.

Petitioner is ordered released forthwith from the Armed Forces of the United States and from the custody of respondents. It is further ordered that this matter be, and it is hereby returned to Selective Service Local Board No. 78 for medical interview of registrant and proper consideration in accordance with the law and regulations.