**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roger Sutton SMITH, Defendant-
Appellant.**

**No. 24161.**

United States Court of Appeals,
Ninth Circuit.

March 10, 1970.

Rehearing Denied April 29, 1970.

G. Bernard Fedde (argued), Portland, Or., for defendant-appellant.

Sidney I. Lezak (argued), U. S. Atty., Tommy Hawk, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before DUNIWAY, WRIGHT and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge.

Smith was convicted of violating 50 U.S.C.App. § 462 in that he refused induction into the Armed Forces of the United States. We affirm. He raises three separate issues on this appeal. We consider each separately.

1. *Was the induction order issued on September 6, 1967 valid?*

Smith was classified 1–A. He argues that his induction notice was invalid because it was signed by the clerk of his local board, and because there was no indication that the board had ever

met to select him and order him inducted. These arguments are not available in this circuit. United States v. Bowen, 9 Cir., 423 F.2d 266; United States v. Hulphers, 9 Cir., 421 F.2d 1291; Rusk v. United States, 9 Cir., 419 F.2d 133; cf. United States v. Stark, 9 Cir., 418 F.2d 901 (in banc).

## 2. *The finding of acceptability.*

■ Smith next argues that the local board erred in refusing his attempt to appeal a finding of physical acceptability. As we shall see, it is doubtful whether he attempted such an appeal. But assuming that he did, we find that the regulations were substantially followed, and, in any event, that there was no prejudice shown.

Smith relies on 32 C.F.R. § 1628.1.[1] He also cites Army Regulation 40–501, Procurement Medical Fitness Standards. Chapter 2–31 of that regulation states, "The causes for rejection for appointment, enlistment, and induction are * * * (b) (2) Migraine when frequent and incapacitating." Smith says that he suffers from this disability. He says that he was never told that he could consult with the board's medical examiner. He also argues that, after he had been examined and found fit, he should have been advised by his board that he had a remedy through the local board's medical advisor, or the surgeon of the United States Army recruiting command, or the medical advisor to the State Director of California, or Lewis B. Hershey.[2] These arguments require the statement of a bit of history as disclosed by Smith's Selective Service file.

Smith registered with his local board on May 1, 1964. The questionnaire that he filed, SSS Form 100, asked the following question: "2. If you have any physical or mental condition which, in your opinion, will disqualify you for service in the Armed Forces, state the condition." Smith's statement was: "I am subject to severe allergy headaches cause [sic] by dust." He did not elaborate; he did not submit any supporting medical information; he did not then or thereafter ask for an interview with the board's medical examiner.

On August 3, 1965, Smith was ordered to report for a physical examination on August 17, 1965. The matter was delayed by transfer between his local board in San Jose, California, and a local board in Medford, Oregon, where Smith was then living. Meanwhile, on August 12, Smith filed a Current Information Questionnaire (SSS Form 127) in which he answered the same question as above as follows: "I am allergic to a high degree to dust and feathers." On December 7, 1965, he filed another form 127. This time he said: "Chronic headaches partially stemming from allergies and partially from an unknown cause. Also feet."

He was finally ordered to report for examination on December 13, 1965, and did so. He presented a letter from his doctor detailing some problems with his feet, but, so far as the record shows, nothing else. He was found "fully acceptable."

As the foregoing recital discloses, up to the time of the December 13 examination nothing had been brought to the board's attention indicating that Smith suffered from incapacitating migraine. There was thus no reason for the board to suggest that Smith interview its medical advisor as provided in § 1628.1. Moreover, the medical examination had

1. "The Surgeon General of the Department of the Army shall, from time to time, prescribe or approve a list enumerating various medical conditions or physical defects that disqualify registrants for service in the Armed Forces. A medical interview of certain registrants by the medical advisor to the local board shall be accomplished for the purpose of screening and disqualifying at the local board those registrants who have conditions or defects enumerated in the list." [32 C.F.R. § 1628.1.]

2. We are cited to no statute, rule or regulation providing a right to appeal in such a case, to the Surgeon of the United States Army recruiting command, to the medical advisor to the State Director, or to General Hershey.

found him fit. It is against this background that subsequent events must be considered.

On December 23, 1965, Smith's local board received a detailed medical history from Smith's doctors. This report shows a history of headache problems, and concludes:

"In general, this lad has had recurrent severe frontal bilateral headaches that he has difficulty controlling with much medication and for which we have diligently searched for causes that might be more serious or even possibly fatal. At the moment, it appears that etiology of this is severe tension problem and that he does have an underlying allergy component as antihistamine does indeed give relief. Otherwise, his health continues to be basically good."

It was not accompanied by a request that the board do anything, nor even by an inquiry from Smith as to what he might do.

There the matter rested until May 1, 1967, when Smith filed another form 127, in which he described his condition: "Severe migraine headaches which require constant treatment with fiorinal. Previously submitted." The latter statement apparently refers to his doctor's report filed December 23, 1965. This was Smith's first reference to migraine headaches. Again, no request was made that the board do anything; no inquiry was made as to what Smith might do.

Nevertheless, on May 10, 1967, Smith was again ordered to report for a physial examination. Presumably, this was in response to the claim made by Smith. We think that the board acted properly. In the light of what had gone before,

the Board had reason to doubt the existence of the claimed disability. It therefore acted as § 1628.4(e) provides that it may act.[3] In doing so it followed the direction contained in Selective Service Operations Bulletin # 327(3).[4] Again, there were delays, caused by transfers between San Jose and Medford. Smith was examined on July 28, 1967. The record shows that the headache problem was considered. His doctor's report bears the stamp: "Previewed and considered in Examinee's Physical Profile." He was found acceptable.

On September 6, 1967, he was ordered to report for induction on September 17. Again, there were delays, involving transfer of his file to Medford.

Meanwhile, on September 18, his board in San Jose received a letter from him reading in part: "I * * * am making an appeal for change of classification. This upon receipt of a Notice of Acceptability which infers continuance of a classification I believe to be in error. An SSS 150 form [the form for a claim of conscientious objection] will follow. * * *" He had asked for the form, 150 by letter dated September, 9, received by his board on September 11. We find it difficult to construe this as an appeal from the finding that he was physically acceptable. All that is pointed to is a claim of conscientious objection. Moreover, the letter was received *after* he had been ordered to report for induction. Smith says that, on September 13 he telephoned his board, talked to a woman there, and said that he wanted to arrange to talk with the board's medical advisor. He says the woman told him he could not talk to the medical advisor. A letter from him to

3. "If the local board determines that the registrant does not have a disqualifying medical condition or physical defect which appears in the list described in § 1628.1 or if the local board has any doubt concerning the existence of any such condition or defect, the local board shall order the registrant to report for armed forces physical examination as provided in section 1628.11." [32 C.F.R. § 1628.4(e).]

4. "The claimed defect must be one that has not been previously presented and evaluated by the local Board Medical Advisor or the Armed Forces Examining and Entrance Station. If the registrant has already had his physical examination the papers submitted should be sent to the Examining Station for evaluation by the physicians there." [Selective Service Operations Bulletin #327(3).]

his board stating the foregoing was received by the board on February 8, 1968.

All of this happened, if it did happen, after he was ordered to report for induction. No change of status, occurring after that order, is recited in either letter. At most, as to his physical condition, Smith's letters are insufficient requests to reopen his classification.

Smith finally reported for induction at Portland, Oregon on February 20, 1968. The medical report shows that he was found fit, and that the report of his doctors had been again considered.

We can find no non-compliance with law here. And, if there were, we find no prejudice. Smith has had three examinations, and at the second and third, the information relating to his headaches was available to the examining doctors and was considered. Each time he was found acceptable.

The recent case of Benitez-Manrique v. Micheli, D.C. Puerto Rico, 1969, 305 F.Supp. 334, differs from this case. There, the registrant brought evidence of his claimed physical disability to the draft board's attention before any physical examination. Neither the medical advisor to the board nor the board acted upon it. Here, Smith brought the matter to the Board's attention only after he had been examined and found acceptable. The local board did act on it; it ordered him to report for a second physical examination, a procedure that was in substantial conformity with 32 C.F.R. § 1628.4(e). In the absence of contrary evidence, we assume that the determination referred to in that subsection was made, i. e., that the board had a doubt as to the existence of the claimed disqualification. That determination is supported by ample basis in fact in the record.

### 3. *Basis in fact statement.*

██ Finally Smith contends that the local board should have given him a "basis in fact statement" when it refused to reopen his classification after receiving his SSS 150 form (request to be classified as a conscientious objector).

Smith received his induction orders on September 7, 1967. Two days later he wrote to his draft board requesting the SSS 150 form, which he received, completed and returned to the board. On October 5, 1967 the board refused to reopen his classification. The board was bound by 32 C.F.R. § 1625.2 which provides that a registrant's classification shall not be reopened after his notice to report for induction has been mailed unless the local board first specifically finds that there has been a change in the registrant's status since the notice was mailed which resulted from circumstances over which the registrant had no control. It made no such finding. In this case there is ample evidence that Smith's beliefs had crystalized long before his notice of induction was mailed. He admitted himself that he would have applied for conscientious objector status long before had he not been confident of getting a 4–F exemption. Under these circumstances the local board was not required to reopen Smith's classification, United States v. Hulphers, *supra*; Rusk v. United States, *supra*; United States v. Weersing, 9 Cir., 1969, 415 F.2d 130; Dugdale v. United States, 9 Cir., 1968, 389 F.2d 482. *Cf.* Ehlert v. United States, 9 Cir., 1970, 422 F.2d 332 (*in banc*).

Affirmed.