**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Juan Manuel BARAY, Defendant-Appellant.**

**No. 26094.**

United States Court of Appeals, Ninth Circuit.

July 13, 1971.

Victor Sherman (argued), of Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for defendant-appellant.

Brian J. O'Neill, Asst. U. S. Atty. (argued), Larry Flax, Asst. U. S. Atty., David R. Nissen, Chief, Crim. Div., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, HUFSTEDLER and TRASK, Circuit Judges.

BARNES, Circuit Judge:

Juan Manuel Baray appeals his conviction of failure to submit to induction into the Armed Forces in violation of 50 U.S.C.App. § 462(a).

Baray, a Jehovah's Witness, registered with the Selective Service System on October 4, 1963. In September, 1964 he completed a classification questionnaire (SSS Form 100) in which he stated that he was a minister of the Jehovah's Witnesses and was a conscientious objector. He also indicated that he had been treated for tuberculosis and had been institutionalized for treatment for a period of five months.

Subsequently, the Local Board sent Baray SSS Form 150 (Special Form for Conscientious Objectors) which he completed and returned within ten days. The form detailed appellant's claim for deferment as a conscientious objector and again indicated that Baray was a minister of the Jehovah's Witnesses. In response, the Board requested Baray to appear personally before them for the purpose of clarifying information in his Selective Service file.

No determination of classification was made by the Board at the time of Baray's appearance. Instead, the Board voted to "hold for further information pertaining to ordination of registrant." [SSF 22] [1] On May 15, 1965, Maple M. Johnson, Presiding Minister of the Huntington Park Congregation of Jehovah's Witnesses, sent a letter to the Local Board certifying Baray's ordination by baptism as a Jehovah's Witness minister. [SSF 23] Then on September 8, 1965, appellant was classified I–A. No reason was given by the Board for denying either the requested I–O or IV–D classification. Baray did not appeal the I–A classification.

On November 2, 1965, the Board ordered Baray to report for a physical examination at the Armed Forces Entrance and Examination Station. [AFEES] At that examination Baray was found not physically acceable for military service under current standards because of his history of tuberculosis. As a result of that examination, the Board classified appellant I–Y. [Unacceptable for military service under current standards except in case of national emergency.]

Baray was ordered to report for a second physical examination on June 9, 1967. At that time he was found acceptable, whereupon he was reclassified I–A by the Board and ordered to report for induction. He reported as ordered but was found to be unacceptable at the induction physical inspection. Baray was not reclassified at that time.

On October 16, 1967, Baray was ordered to report for a third pre-induction physical examination. Again he was found to be unacceptable. Despite this fact, he was not reclassified I–Y by his Board but was retained in classification I–A.

On January 19, 1968, Baray was once again ordered to report for examination. This time he was found to be acceptable and was subsequently ordered to report for induction. That induction was postponed.

---

1. SSF refers to the pagination of Baray's Selective Service file.

Baray was next ordered to report for examination on July 15, 1968, at which time he was found acceptable. Appellant was ordered to report for induction on August 21, 1968. At that time he refused to submit to induction as ordered.[2] This prosecution followed.

■ The validity of Baray's classification is challenged on two grounds. The first is the rejection of his claim for deferment as a conscientious objector. A review of Baray's file reveals that he presented a *prima facie* case for deferment as a CO. Appellant was a Jehovah's Witness and was considered an active minister of that faith. On appellant's Form 150 he stated that his beliefs against the use of force were based on his study of the Bible and upon the teachings of Christ. [SSF 16] Nevertheless, the Board rejected his claim without stating its reasons for so doing. That failure constitutes reversible error under this Court's decision in United States v. Haughton, 413 F.2d 736 (9th Cir. 1969) wherein we held that:

"The local board * * * must state the reasons for its denial of a. requested classification when a registrant has 'met the statutory criteria' * * * for that classification or, * * * has placed himself 'prima facie within the statutory exemption.'" (at 739)

However, because Baray failed to appeal the classification decision of the Local Board, he is precluded from relying upon *Haughton* unless he can show that his failure to appeal was the result of "exceptional circumstances". Lockhart v. United States, 420 F.2d 1143, 1147 (9th Cir. 1969) (*en banc*). Baray presents several factors which he believes constitutes sufficient "exceptional circumstances". However, because we find compelling appellant's suggested alternative grounds for reversal, we do not find it necessary to consider in this opinion, the "exceptional circumstances" he urges.

■ Turning to the alternative grounds for reversal, we find that Selective Service Regulation 1628.2(b) grants to registrants the right to an interview with the Local Board's medical advisor

---

2. Appellant stated his reasons for refusing induction in a letter to the Board dated August 21, 1968. It read as follows:

"I, John M. Baray, have been advised of my rights as a U.S. Citizen as well as the penalty for refusing induction.

"At the present time I happen to be very nervous and very mixed up. I happen to have had tuberculosis and according to my doctor I still have it although I do carry on a normal life. I refused induction because of the fact that my physician recommended that I not engage in strenuous activity due to the fact that I could easily contract the disease again.

"I look back to my time in the hospital (Olive View Sanitarium) and cannot think of a more distressing or unhappy situation. Unable to even take a walk or play ball at a time when I should have. Being confined to a bed for six months made me appreciate a lot of things in life. I look back and say to myself, now that I am responsible for my wife and possibly my children, what if I break down again and go to the hospital perhaps with even a worse case since it would be a reoccurrence and possibly a longer stay. That would just about do it for me as far as being a happy normal man. I couldn't make it through another six even four months flat on my back, I know I couldn't.

"Only a person who has spent time in a hospital like I have, and not be able to even go to the restroom without asking permission can appreciate what I'm saying.

"I am very glad to be able to make this statement as no one has really listened to me or my predicament. According to the doctors at the AFEES station I'm ok yet to my own doctor I still have T.B. This is really a mixed up situation.

"Thank you for again letting me state my reason simply that breaking down again is more than I could take and no one can guarantee that I won't. I just don't want to take that chance. I'll be right back where I started years ago. 1. Convalesing [sic] 2. finding a job that won't need too much exertion 3. adjusting to normal life 4. Guarding myself from getting T.B. again.

Thank you
/s/ Juan M. Baray."

under certain conditions.[3] Specifically, the Regulation provides that:

"Whenever a registrant who is in class I–A, class I–A–O, or class I–O claims that he has one or more of the disqualifying medical conditions or physical defects which appear on the list described in Section 1628.1, the local board shall order him to present himself for interview with the medical advisor to the local board at the time and place specified by the local board by mailing to such registrant a Notice to Registrant to Appear for Medical Interview (SSS Form 219)."[4]

At the time Baray registered with the Local Board, he indicated that he had been treated at Olive View Sanitarium, a tuberculosis treatment facility, from March 1961, to August 1961. This statement alone can be characterized as insufficient to state a claim, strictly interpreted, of a disqualifying medical condition or physical defect. The Surgeon General's list of disqualifying conditions, which is published in Army Regulation 40–501, states with respect to tuberculosis that the registrant must: 1) have tuberculosis which is active, or which has been active within the previous two years, 2) have a history of relapses of pulmonary tuberculosis, or 3) have residual physical or mental defects from past tuberculosis that would preclude satisfactory performance of duty. Baray's registration questionnaire stated that he had been treated for tuberculosis more than two years prior to the time of registration and did not indicate whether there was a history of relapse or restrictions on his physical capabilities. Therefore, in the very restrictive sense of the word, the statement did not "claim" a "disqualifying condition" as expressed by the language of the pertinent provisions of Army Regulation 40–501. See United States v. Ehret, 431 F.2d 1146, 1148 (9th Cir. 1970). Nevertheless, even though this claim may have been insufficient to require the Board to order Baray to report for an interview with the Local Board medical advisor at the time of registration, Baray was subsequently found to be physically unacceptable for military service by reason of his history of tuberculosis at the pre-induction examination.[5] This finding was sufficient to alert the Board that Baray suffered from a condition which in fact was disqualifying. Furthermore, it should be noted that the AFEES examining officer indicated that Baray could be returned in the future for re-evaluation. With such a comment, Baray's Local Board was under the directive of Local Board Memorandum 78, (May 29, 1963) which stated that:

"Whenever the armed forces examining and induction station suggests that a registrant be returned for reevaluation after a specified time, the registrant should be interviewed by the medical advisor to the local board before he is returned to the station, to

3. This Court held in United States v. Lloyd, 431 F.2d 160 (9th Cir. 1970) that the Board was not bound to order a medical interview where the registrant ignored a letter from the Board which requested the registrant to submit supporting statements from doctors with respect to his disqualifying condition. This Court viewed such a request as a reasonable preliminary to implementing Regulation 1628.2(b) which would otherwise lend itself to abuse by registrants submitting unsupportable claims of disqualifying conditions. In the present case, Baray's claim was supported by a finding of unacceptability by the AFEES examining officer.

4. Pursuant to Executive Order No. 11553, issued August 26, 1970, subsection (b) of § 1628.2 has been revoked and subsection (a) has been amended to make the Board's duty discretionary rather than mandatory.

5. At various times subsequent to this examination the Board received letters from doctors at Alhambra Health Center, County of Los Angeles Health Department, who had treated Baray and who recommended that Baray not engage in strenuous physical activity or labor in light of the possibility of reactivation of the pulmonary tuberculosis, SSF 76, 75, 73, 72, 70.

determine whether it would be appropriate to forward the registrant for reevaluation." [6]

In this instance, the directive was not followed, even though the Board was then aware that Baray suffered from a disqualifying physical condition.

We find that this case is unlike United States v. Smith, 423 F.2d 559 (9th Cir. 1970), relied upon by the government, in which the registrant, after having been found acceptable at his pre-induction physical examination, notified the Local Board that he was suffering from migraine headaches and requested a medical interview. There we held that the Board had reason to doubt the existence of the claimed disability and acted properly when it ordered the registrant to report for another physical examination. Here, the registrant had a history of pulmonary tuberculosis and had in fact been found unacceptable by the military's examining officers.

■ We reject the government's argument that failure to follow the prescribed regulation regarding medical interviews was not prejudicial because the registrant was found acceptable in a subsequent physical examination. Several reasons can be advanced for the promulgation of Regulation 1628, many of which reflect the interests of the government.[7] One important reason, however, inures to the benefit of the registrant. Unlike the preinduction physical examination in which hundreds of registrants may be examined by several doctors in a day's processing, the medical interview gives the registrant the opportunity to have a single doctor focus his attention on the registrant's individual condition and make a specific finding thereon. Baray was never given that opportunity afforded by the regulation. Instead, he was repeatedly ordered to report for physical examinations at each of which he manifested the same condition and presented the same letters from physicians who had treated him at the tuberculosis sanitarium. On three separate occasions he was found unacceptable. Even so, on three other occasions he was found qualified. These findings were inconsistent at best and presented a most compelling case for independent medical evaluation by the Local Board's medical advisor at an interview made *mandatory* by the regulations.

■ While the denial to Baray of this substantial right granted by Regulation 1628 is alone sufficient to warrant reversal, the record discloses that the Local Board further prejudiced Bar-

6. Local Board Memorandum No. 78 was amended August 10, 1970. The amended version no longer contains the provisions on which appellant relies. Statutes and Regulatory Material, SSLR 2192:1.

A memorandum from the California Headquarters of the Selective Service System, dated August 24, 1962, to all local boards stated in part,

"The comment of the examining station that a re-evaluation may be justified at a later date should not be considered a recommendation or a request that the registrant be returned. It is the prerogative and responsibility of the local boards to determine whether such individuals should be returned for reexamination.

"We feel that the local boards should review each case involving a temporary rejection by the examining station where it has been stated that reexamination at a later date is believed justified and unless information has been received to indicate that the defect causing rejection has been remedied, or that a fracture has healed, etc., the board would be justified in determining that the registrant should not be forewarded for reexamination at the time indicated by the examining station. In such a case examination processing would be held in abeyance until information is received to indicate that the defect causing his rejection has been remedied at which time he should be ordered for reexamination if he is at that time still available for such processing."

7. One reason for the regulation requiring screening of unacceptable registrants prior to return to AFEES for reexamination is found in the memorandum in footnote six.

"A number of cases have been brought to the attention of this Headquarters re-

ay by failing to reclassify him I–Y. At the time Baray was first ordered to report for induction, he was found physically unacceptable and rejected from service. In contravention of Regulation 1622.17,[8] however, the Board did not reclassify Baray I–Y even though he had been found to be not currently qualified for service in the Armed Forces under applicable physical standards. Likewise, on November 8, 1967, Baray was examined at a preinduction physical and found unacceptable but was not reclassified I–Y. Instead, in both instances, the Board continued Baray in classification I–A.[9] By so doing, in disregard of the regulations, Baray's classification was never reopened and he was not given the automatic right of appeal which accompanies reclassification. The erroneous deprivation of Baray's right to appeal was prejudicial, and, like the failure to grant a medical interview, requires reversal of appellant's conviction.

Reversed, and remanded with instructions that appellant's file be returned to Local Board for further proceedings consistent with this opinion.

cently in which registrants who have been found unacceptable by the armed forces examining station because of temporary physical defects have been returned three and four times for reexamination at the suggestion of the examining station only to be found unacceptable time after time. This procedure is not only wasteful from the standpoint of transportation costs, but is an inconvenience to the registrants some of whom lose time from work with resultant loss of pay and in many cases serves no useful purpose."
See also Benitez-Manrique v. Micheli, 305 F.Supp. 334, 338 (D.C.P.R.1969).

8. 1622.17 Class I–Y: Registrant Not Eligible For a Lower Class Who Would be Qualified for Military Service in Time of War or National Emergency. In Class I–Y shall be placed any registrant who, under provisions of section 1623.2 of this chapter, is not eligible for a lower class, and would be classified in Class I–A, Class I–A–O, or Class I–O but for the fact that he is found under applicable

physical, mental, and moral standards to be not currently qualified for service in the Armed Forces and who would be qualified for such service in time of war or national emergency declared by the Congress.

9. Some question arises as to whether AFEES made a "final" determination of Baray's condition at the examinations. See Reg. 1632.30 and United States v. McKinney, 427 F.2d 449 (6th Cir. 1970). subsequent letters [SSS Form C–278] from the Board to Baray indicate that AFEES had not reached a conclusion on Baray's status. However, we find no communication from AFEES to the Board in Baray's file indicating that fact, and we refuse to uphold this conviction by inferring that such communication was made. We can more readily infer from the minute entry of December 6, 1967 that the Board received the DD Form 62 marked "rejected" from AFEES, although that form is also missing from Baray's file.