**UNITED STATES of America,
Plaintiff,**

v.

**Bradley Leonard PAGE, Defendant.**

**No. 4–71 Cr. 227.**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 25, 1972.

Robert G. Renner, U. S. Atty., by Peter J. Thompson, Asst. U. S. Atty., for plaintiff.

Johnson & Eastlund, by Mark T. Solstad, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

Defendant originally registered with his Local Selective Service Board October 19, 1967. After receiving a II–S deferment, he was reclassified I–A on December 19, 1968. He requested a personal appearance before the Board and when his plea for an additional student deferment was denied, he perfected an appeal. September 22, 1969 the Appeal Board classified defendant I–A by a vote of 5–0, thus denying his claim for additional student deferment. July 7, 1969 he was ordered to report for a physical examination and the file shows a certificate dated July 6, 1969 to the effect that defendant was "found not acceptable for induction under current standards . . . medically qualified recall one month for AFQT [Armed Forces Qualification Test]". The test later was administered with a grade of 80, 10 being passing, and under date of July 21, 1969 a similar certificate appears in the file "found fully acceptable for induction into the Armed Forces." No further activity appears in the file for approximately eight months when the Local Board apparently reviewed the file again and on May 21, 1970 by a vote of 3 to 0 continued his classification at I–A.

May 22, 1970 defendant was ordered to report for induction on June 9, 1970. Thereafter and on July 7, 1970 defendant submitted Form 150, the special form for conscientious objectors, thus for the first time asserting such claim. Defendant's request for Form 150 bears a date of August 2, 1969, though not received by the Board until June 5, 1970. The Board clerk, recognizing this discrepancy wrote for an explanation to which defendant replied that the reason for the 10 months pre-dating was that he made it out August 2, 1969 but never mailed it, and when he finally decided to, he did not change the date. Meantime, defendant's induction was postponed until further notice. The Board afforded him a courtesy interview but refused to reopen, determining that there was no change of circumstances

beyond defendant's control within Section 1625.2 of the Code of Federal Regulations.

Defendant appeared at the Selective Service Induction Center on September 10, 1970, his postponed induction date and, according to his own letter in the file, "I reported for my induction with the hope that I might fail the physical and not have to refuse induction. As things turned out, I didn't fail the physical and felt that I had no other choice but to refuse induction."

The court has no doubt and so finds that defendant's failure was knowing and wilful. The only question in the case is whether procedurally defendant was accorded all of his rights at the draft board and Appeal Board levels.

Defendant raises five procedural questions all or any one of which he claims invalidate defendant's induction order and thus require his acquittal.

■ *First*: When defendant was found not acceptable on June 6, 1969 as a result of his physical examination of May 19, 1969, he was entitled to a I–Y or 4–F classification and the Board should therefore have so classified him; that had it done so, then on an attempted re-classification to I–A he would have had a right of personal appearance and correlative rights of appeal. He cites Code of Federal Regulations §§ 1622.1 and 1622.17. The Court would agree with the defendant that the regulation would require the board so to do *if* there were finality to the finding of nonacceptability. The certificate is, however, in effect merely in the nature of an interim one and recites that he has not yet completed his examination in that he has yet to undergo his A.F.Q.T. When he did take this test he passed and then a certificate of acceptability was issued. United States v. Baray, 445 F.2d 949 (9th Cir. 1971), is not authority to the contrary.

■ *Second*: Defendant claims that the indictment alleges that defendant failed to report for induction and does not use the common and usual language "failed to report for *and submit to* induction"; that defendant did in fact report to the induction center and his crime, if any, was solely failure to submit to induction. He raises the spector that should he be convicted here and again indicted, any judgment here would not be final and he could not plead double jeopardy against a failure to submit. The court regards this as a purely technical contention. It has been held that a registrant owes a continuing duty. The language of the indictment is fairly capable of the construction that he is charged with failing "to report for the Armed Forces." Further, defendant by his own letter in the file, is guilty of having refused "to report for induction"; rather he reported not "for induction" but for the purpose of refusing and declining induction. It is of course clear as a matter of pleading, that defendant has not been mis-led in any way by this technical disparity or failed to receive notice of the offense with which he is charged.

■ *Third*: Defendant claims his random draft number was 158, that his induction order was mailed May 22, 1970, two weeks prior to the time that random sequence draft No. 158 was reached. It was stipulated, however, that other registrants bearing No. 158 were reached on June 2, 1970, some seven days before defendant's required (and later postponed) appearance. The court does not regard this as being called out of order, even though notice preceded by two weeks, and Code of Federal Regulations § 1631.7 is not to the contrary. Actually, because of the postponement defendant's reporting date was not until September 10, 1970.

■ *Fourth*: Defendant asserts, based on defendant's Exhibit No. 1, the minutes of the Appeal Board meeting of September 22, 1969, consisting of 15 pages—that he was not accorded due process. He demonstrates that in a 4½ hour period of its meeting the Appeal Board considered some 387 cases and thus spent an average of a little less

than 42 seconds on each case. This appeal was on the refusal of the Board to grant defendant a further II–S deferment. He relies on the case of United States v. Wallen, 315 F.Supp. 459 (D. Minn.1970).

The file contains a number of papers relating to defendant's record at school. The regulation requires that where a Baccalaureate Degree requires 190 credits, a registrant to maintain a II–A deferment must acquire 25% thereof each academic year. The file indicates that from January 1969 to March 1969 defendant acquired three credits, September 23, 1968 to January 25, 1969—6 credits; January 16, 1969 to March 20, 1969—4 credits. He signed a statement in the file that as of February 10, 1969 he was pursuing a course of instruction of 12 credits and at that date, a year and a half after original registration with the Board, had earned but 27 credits. He recited that he had lost credits as follows:

| | |
|---|---|
| "change in school | 8 credits |
| unsatisfactory grades | 4 credits |
| incomplete grades | 8 credits |
| withdrawal from class | 9 credits" |

It is obvious from the defendant's own statement that he could not have and did not qualify for a further II–S student deferment. The testimony was received that the clerk of the Appeal Board is instructed to and does abstract every file with advance notice to all Board members, with copies of relevant documents included. The Appeal Board members quickly could ascertain defendant's ineligibility. It was not that the Board had to review in detail the 16 to 18 documents relating to the question. There was no "gray area" here. The court does not see any violation in these circumstances of due process nor the applicability of the *Wallen* decision, which was a conscientious objector case.

■ *Fifth*: Defendant contends that the only evidence the government is adducing at trial is the cover sheet selective service file of the registrant and the delivery list, identified by the clerk of the Board who has no particular familiarity with or recognition of the instant case that the record is devoid of any testimony of witnesses who had any active knowledge; that this is not sufficient to warrant a conviction under United States v. Brady, 4 SSLR 3126 (D.Mass. May 4, 1971). The court does not read that case so to hold under these circumstances and recognizes the file as an official government document containing admissible statements of fact made by and from the defendant.

Counsel has made no point of the late filed claim for conscientious objection, and indeed under Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L. Ed.2d 625 (1971), could not well do so.

A separate order for judgment of guilty has been entered.