UNITED STATES of America,
Plaintiff-Appellee,

v.

John Christopher D'ARCEY,
Defendant-Appellant.

No. 71-2311.

United States Court of Appeals,
Ninth Circuit.

Dec. 29, 1972.

Jerry E. Berg, Palo Alto, Cal., for defendant-appellant.

James L. Browning, Jr., U. S. Atty., F. Steele Langford, John F. Cooney, Jr., Asst. U. S. Attys., San Francisco, Cal., for plaintiff-appellee.

Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, KILKENNY, TRASK, CHOY, GOODWIN and WALLACE, Circuit Judges.

HUFSTEDLER, Circuit Judge:

D'Arcey appeals from his conviction for refusing to submit to induction, 50 U.S.C. App. § 462.

D'Arcey registered with the Selective Service System on March 18, 1967. On July 18, 1967, at the Armed Forces Entrance and Examination Station ("AFEES"), he was examined and found physically unacceptable for voluntary enlistment in the Marine Corps. The record of this examination indicated that a question was raised concerning a claimed condition of hypoglycemia or hyperinsulinism (a concentration of glucose in the blood at below normal levels), but the examining physician was unable to obtain sufficient details to verify this condition. The findings stamped on this record are: "PHYSICALLY DISQUALIFIED—RE-EXAMINATION BELIEVED JUSTIFIED." At this examination, D'Arcey was given a form to be completed by his physician and returned to his local board. On September 12, 1967, his local board classified him 1–A. On May 1, 1968, D'Arcey submitted a current information questionnaire reporting that he was suffering from hypoglycemia.[1] At the same time, he filed with the local board the form which he had been given at his previous physical, completed by his physician and confirming his claimed condition. The board did not consider this information, but it ordered him for a preinduction physical on June 27, 1968. He was then found physically acceptable. The board therafter reviewed his file and decided not to reopen his classification. With the assistance of a government appeals agent, D'Arcey perfected an appeal. He was retained as 1–A. On June 18, 1969, he refused induction. We reverse D'Arcey's conviction because the failure of his local board to afford him an individual medical interview denied him due process. We do not reach his other contentions.

At the time the local board acted, 32 C.F.R. § 1628.2(b) provided:

"Whenever a registrant who is in Class 1–A . . . claims that he has one or more of the disqualifying medical conditions or physical defects

---

1. Although the term "hypoglycemia" does not appear on the Surgeon General's list of disqualifying medical conditions and physical defects, the condition to which hypoglycemia relates is inextricably bound to "hyperinsulinism." Allan, "Hyperinsulinism, Hypoglycemia, Hypoglycosis," in *The Cyclopedia of Medicine, Surgery, Specialties* vol. VI, at 906 (1971 rev. ed.) ; McNalty (ed.), *Butterworth's Medical Dictionary* 703–04 (24th ed. 1965) ; Derick, "Spontaneous Hyperinsulinism and Allied States: Hypoglycemic Syndrome," in Christian (ed.), *The Oxford Medicine* 178(27) (1949). Even if it could be assumed that hyperinsulinism and hypoglycemia are separable, hypoglycemia is unquestionably encompassed by AR 40–501, ch. 2, § VI, ¶ 2–8(n) : "*Other endocrine or metabolic disorders* which obviously preclude satisfactory performance of duty or which require frequent and prolonged treatment."

which appear in the list described in Section 1628.1, the local board *shall* order him to present himself for interview with the medical advisor to the local board. . . ." (Emphasis added.)[2]

The referenced list was prepared by the Surgeon General of the Department of the Army. It enumerates medical conditions and physical defects which disqualify registrants from service in the armed forces. Hyperinsulinism is among the listed conditions. (AR 40–501, ch. 2, § VI, SSLR 2205.)

■ The Government argues that the board was not required to order D'Arcey for a medical interview; instead, it could order him for a preinduction physical under the terms of 32 C.F.R. § 1628.4(e) and Selective Service Operations Memorandum No. 327. Section 1628.4 states the duties of the local board when a medical interview is required: Subsection (a) requires the board itself to conduct the interview when a medical advisor is unavailable; subsection (b) concerns the bookkeeping to be done before the interview takes place; subsection (c) concerns bookkeeping after the interview and requires that the local board determine whether or not to order the registrant for a physical "after considering the findings and recommendations of the medical advisor"; subsection (d) outlines the action the board must take if it determines, on the basis of the interview, that the registrant is physically disqualified; and subsection (e) requires the board to order the registrant for a physical in the normal course if it determines he is qualified; it also provides that if the board has any doubt about the registrant's physical condition, it shall order him for a physical. Subsection (e) read in context is intended to allow the board to order a man for a physical if, *after the medical interview,* it still has any doubt about his accepta-

bility. The regulation does not provide an alternative to the mandatory medical interview.

■ Selective Service System Operations Memorandum No. 327[3] provided that in order to be entitled to a medical interview "[t]he claimed defect must be one that has not been previously presented and evaluated by the . . . Armed Forces Examining and Entrance Station. If the registrant has already had his physical examination, the papers submitted should be sent to the Examining Station. . . ." Prior to May 1, 1968, when he advised the local board of his physical condition, D'Arcey had been found disqualified for enlistment in the Marines by the AFEES. The record is unclear as to whether the claimed condition of hypoglycemia or hyperinsulinism was "evaluated" at that time. Even if it were, however, the memorandum did not relieve the board of its duty to order D'Arcey for a medical interview.

Cases which have upheld a local board's determination to order a registrant for a second physical rather than schedule a medical interview after he has presented a prima facie claim all involved registrants who had been examined and found physically acceptable prior to presenting a claim for physical disqualification. (*See* United States v. Neckels (9th Cir. 1971) 451 F.2d 709; United States v. Smith (9th Cir. 1970) 423 F.2d 559.) The rationale of those cases and of Memorandum No. 327 was intended to prevent the disruption of the administrative process that could result if registrants could delay imminent induction by requiring medical interviews for claims which a prior examination had rendered doubtful. D'Arcey was found disqualified by AFEES. The prior determination confirmed his later claim to the board. It makes little sense to require him to submit additional information to the same physicians who had already disqualified him. His situa-

2. After the events in this case, the regulation was amended (E.O. 11553, 35 Fed. Reg. 13719 (Aug. 28, 1970). The amend-

ment is cast in permissive, rather than mandatory, terms.

3. Revoked Aug. 26, 1970.

tion is similar to that of a registrant who has been found disqualified by AFEES and who may be returned for reevaluation. In that situation, Local Board Memorandum No. 78 required that the registrant be given a medical interview by the local board before he was returned to AFEES.[4] (United States v. Baray (9th Cir. 1971) 445 F.2d 949.)

The Government's contention that D'Arcey had to make a specific request for a medical interview is refuted by the plain language of the regulations. Section 1628.2(b), 32 C.F.R., requires the local board to order a medical interview if a registrant classified 1–A claims a disqualifying defect. Similarly, it is settled that the fact that D'Arcey was subsequently found acceptable by AFEES does not mean that he was not prejudiced by the denial of a medical interview. "Unlike the preinduction physical examination in which hundreds of registrants may be examined by several doctors in a day's processing, the medical interview gives the registrant the opportunity to have a single doctor focus his attention on the registrant's individual condition and make a specific finding thereon. . . . [T]he denial . . . of this substantial right granted by Regulation 1628 is alone sufficient to warrant reversal." (United States v. Baray, *supra*, 445 F.2d at 954.)

Considerable confusion has been generated by several decisions in this circuit concerning a registrant's right to a preexamination medical interview. *See, e. g.*, United States v. Neckels, *supra*; United States v. Baray, *supra*; United States v. Goodman (9th Cir. 1971) 439 F.2d 810; Vasilj v. United States (9th Cir. 1970) 425 F.2d 1134; United States v. Smith, *supra*. To the

extent that any of them can be read as indicating that a local board, acting under form 32 C.F.R. § 1628.2(b) and related regulations, can deny a medical interview to a registrant who has presented evidence of disqualification before an examination by AFEES, we overrule them. We hold that a registrant is entitled to a medical interview prior to being ordered for a physical examination when there is evidence of a recognized disqualifying medical condition or physical defect that has not been the subject of a previous examination or evaluation by AFEES. Similarly, if a registrant has been duly examined by AFEES and found acceptable before he presents a claim of disqualification to the local board, he is not entitled as a matter of right to a medical interview prior to reexamination.

The judgment is reversed with directions to dismiss the indictment.

KILKENNY, Circuit Judge (dissenting):

I would hold that 32 C.F.R. § 1628.-2(b), when read in the light of 32 C.F.R. § 1628.4(e), did not create a *right* in the registrant to the medical interview. It is my belief that the provision for the interview was promulgated for the benefit of the Selective Service System, rather than for the registrant. Otherwise, the ultimate decision on the interview would not have been left to the Board.

In any event, it is only in case that a registrant claims one or more of the disqualifying medical conditions or physical defects which appear in the list specified in 32 C.F.R. § 1628.1 that the local board is required to order him to present himself for an interview. Hypoglycemia, which registrant claimed, is not on the list prescribed by the Sur-

4. Local Board Memorandum No. 78 issued May 29, 1963:

"Whenever the armed forces examination and induction station suggests that a registrant be returned for reevaluation after a specified time, the registrant should be interviewed by the medical advisor to the local board before

he is returned to the station, to determine whether it would be appropriate to forward the registrant for reevaluation."

An amendment to the memorandum on Aug. 10, 1970, deleted the quoted provision. The former provision was in effect at all relevant times in this case.

geon General pursuant to the provisions of § 1628.1. Although hyperinsulinism, on the prescribed list, is manifested by hypoglycemia, the fact remains that hypoglycemia can occur from other causes and does not invariably indicate hyperinsulinism. On the record before us, the Board was under no obligation to turn to a medical dictionary, or, otherwise seek medical advice, in order to pass on the medical claim. Simply stated, his claimed infirmity did not appear on the Surgeon General's list. The Board was not required by the Regulations, or otherwise, to go beyond his claim.

The fact that appellant, on August 5, 1968, directed a letter to the local board, in which he claimed to be suffering from hyperinsulinism, is of no importance. This occurred after appellant had been found physically acceptable on his preinduction physical and the Board had reviewed his file and decided not to reopen his classification. Nowhere in the Regulations can be found a *right* to a medical interview on a late claim such as the one presented on August 5th.

I would affirm the judgment.

TRASK, Circuit Judge (with whom WALLACE, Circuit Judge, joins) specially concurring:

The majority opinion ' reverses the judgment of the trial court for the stated reason that the registrant claimed a disabling medical condition or physical defect and was not accorded a medical interview under 32 C.F.R. § 1628.2(b) by the local board as it was then required to do. The disabling condition claimed by the registrant, upon which the opinion relies for its judgment, was "hypoglycemia."

Unless "hypoglycemia" was on the list of disabling conditions of the Surgeon General, 32 C.F.R. § 1628.1, the registrant's claim of that condition does not require a medical interview and the decision of the majority is clearly in error. Hypoglycemia is not on the list and the

majority concedes as much. It then rationalizes its decision by asserting that hypoglycemia is "the same as" hyperinsulinism, and the latter *is* on the list. I do not find such judicial practice of medicine a palatable exercise. We have enough difficulty mastering the intricacies of our own profession without assuming proficiencies in another which we do not possess. It seems perfectly apparent that the reason for providing that the Surgeon General should "from time to time prescribe or approve a list" of disqualifying medical conditions or physical defects was to render certain and explicit those medical exemptions without requiring or even permitting a local board to engage in the art of diagnosis. A court is in no better position. Had the Surgeon General believed that hypoglycemia was "the same as" hyperinsulinism he was certainly competent to say as much and add hypoglycemia to the list.

Nor do I believe a court is competent to include diseases or conditions which it believes might be encompassed within the general category of "other endocrine or metabolic disorders which obviously preclude satisfactory performance of duty or which require frequent and prolonged treatment."

If an unspecified medical condition is to be included within a general category, that is a medical judgment to be made by a doctor at the Armed Forces Entrance and Examining Station, not by lawyers or judges. This is particularly true when as an added factor a judgment must be made as to whether the unlisted disorders "preclude satisfactory performance of duty or . . . require frequent and prolonged treatment."

In this case there has never been a suggestion in the record that hypoglycemia is "the same as" hyperinsulinism, or that it falls within the general category of "other endocrine or metabolic disorders which obviously preclude satisfactory performance of duty or which require frequent and prolonged treat-

ment."[1] Registrant's claimed condition was based upon a statement from J. Paul Wayne, M.D., in a letter dated October 10, 1968, which said:

"Mr. Chris D'Arcy was found to have symptoms of hypoglycemia on 4/8/66. Confirmed by a glucose tolerance test." (Emphasis supplied). Selective Service File at 34.

The letter bears a stamp on it dated June 18, 1969, (date of proposed induction) which states that the letter has been "reviewed and considered in registrant's physical profile."[2]

I, therefore, dissent from the rationale of the opinion and decision because it stands as a precedent for lawyers and judges to play doctor. This was never contemplated by the law or the regulations.

After this too lengthy statement of disagreement with the rationale, I agree with the result because hyperinsulinism was called to the attention of the board by letter dated August 5, 1968.[3] This date is, of course, considerably after the date the Statement of Acceptability (D. D. Form 62) was issued on June 27, 1968. Judge Kilkenny would dismiss the claim of hyperinsulinism because of its late filing. It was not accompanied by any verification from a doctor or other documentation. Nevertheless, it claimed a disabling condition which, for aught we know, may have developed and been diagnosed on August 4, 1968. The regulations in question requiring a medical interview do not place a time limitation within which the claim must be made. Conceivably such a change of condition could occur up to the induction date. Therefore, substituting hyperinsulinism for hypoglycemia in the majority opinion I would concur in its result. I would not, however, dismiss the indictment, but would remand with directions to the district court to determine the truth of the claim of hyperinsulinism made on August 5, 1968, and thereafter to proceed in accordance with the views expressed in this concurring opinion.

1. At the trial in the district court on May 18, 1971, counsel for registrant introduced a letter he had received from AFEES in response to counsel's inquiry regarding D'Arcey's claimed hypoglycemia disqualification. The response is dated April 15, 1971, and entitled "Re: Inquiry Concerning Mr. Jon Christopher D'Arcey," and is signed by William H. Fee, Jr., Senior Medical Officer. After an introductory technical paragraph, Dr. Fee concluded:

"Reactive Hypoglycemia is rarely disqualifying for entry into military service, and there is no standard glucose value used to diagnose the problem. The diagnosis is made by close correlation between glucose values and the man's symptoms as reflected in the individual's history and as observed by a physician during the actual conduct of the test." C.T. at 26; R.T. at 5.

2. That the hypoglycemia claim was investigated at AFEES is evidenced by the notations in his Report of Medical Examination which was dated October 30, 1968, the examination having begun on June 27, 1968. Hypoglycemia was noted by the registrant on the report of medical history filed by registrant. The medical notes contain a statement "Glucose tolerance test on low range normal N.C.D. [not con-

sidered disabling]" with the stamped name of "L. McCarthy, M.D."

3. This letter, which was called to my attention by the majority and verified in the record, was not mentioned in the majority opinion. It reads as follows:

"August 5, 1968
13982 Quito Oaks Way
Saratoga Calif.

"Santa Clara County Drft Board, #62
111 St. John,
San Jose, Calif.
Gentlemen:

I would like to appeal my 1A classification because I believe I am unsuitable for induction. I have Hyper-Insulinism, a disease which is listed in AR–40–501, the Standards of Medical Fitness under Section 6, Endocrine and Metabolic Disorders, Sub-section 11–8, Paragraph 2.

I would appreciate an appearance with the government appeal agent with the local board and a stay of induction until I have a chance to present my appeal.

Would you please consult with your medical advisor in this matter?

Sincerely,
Jon Christopher D'Arcey
/s/ Chris D'Arcey"