**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clifford Paul COLEMAN, Defendant-Appellant.**

**No. 72–1232.**

United States Court of Appeals, Ninth Circuit.

May 7, 1973.

---

**1372**

Robert Rothman, San Francisco, Cal., for defendant-appellant.

John Cooney, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and CARTER, Circuit Judges, and WILLIAMS,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

Appellant was convicted in a trial without a jury and sentenced for refusal to submit to induction into the armed forces in violation of 50 U.S.C.App. § 462. We reverse. We state the facts appearing in Coleman's selective service file to the extent that they are pertinent to our decision.

In Coleman's classification questionnaire, which he filed with the Board on January 10, 1968, he answered question 2, in Series XI, which asked whether he had any physical condition which in his opinion would disqualify him, by stating: "Migraine headaches." He also sent the Board a doctor's letter to that effect which the Board received on January 10. On April 3 the Board directed him to report to the Board's medical adviser for an interview, which he did on April 11, 1968. The report of the Board's medical adviser was: "Neurological disorder Sec XV 2–31(2). Has frequent recurrences incapacitating for work." The Board did not reclassify him on the basis of this information. We infer that it forwarded the file to the State Director of Selective Service, because, on April 24 the State Director wrote to the Board and instructed it to "Forward registrant for preinduction physical examination when reached for that purpose with his age group."

On October 10, 1968 the Board classified Coleman I-A. On November 6, 1968, Coleman appealed on the ground that he was improperly classified because of his migraine headaches. So far as appears, nothing was ever done with this appeal. For all we know, it remains pending and undecided to this day. Be that as it

---

* Honorable David Williams, United States District Judge, Central District of California, sitting by designation.

may, the Board, on February 19, 1969, wrote to Coleman stating that the facts recited in the letter in which he appealed did not warrant reopening.[1]

On May 21, 1969 Coleman was ordered to report for a physical examination, which he did on June 27. The examining doctor found "Physically disqualified—severe migraine headaches. Reexamination believed to be justified within one year." On July 8, 1969, the Board classified Coleman I-Y. On May 20, 1970 Coleman was ordered to report for another physical examination on June 22, 1970, which he did. Thereafter the Board sent Coleman a statement of acceptability which recited that he had been found fit but also stated: "Registrant advised to present medical evidence to support unverified ailment." Coleman did so, but nothing happened. On July 21, 1970, the Board reclassified Coleman I-A. Coleman did not appeal.

On September 22, the Board ordered him to report for induction on October 21. Coleman reported. A notation in his file states: "10–21–70 Pending Medical for INDUCTION." On November 16, the Board ordered him to report again to AFEES on November 30, with the statement: "If you are found acceptable you will be INDUCTED, so please go prepared." On November 30 Coleman was examined by an AFEES neurologist. The neurologist's conclusions are as follows:

PT. [patient] has approx. [approximately] once per mth. [month] severe headaches unrelieved by Cafergot orally. Also has muscle contraction headaches more frequently. PT. has *not* been tried on the various anti-migraine preps. [preparations] available. Neg. [negative] family hx. [history] of migraine.

IMP. [impression] = Muscle Contraction Headaches (Tension) c̄ [with] probable Migraine Variant Headaches as well.

*Recommend* = (1) Bellergol Spacetabs, ⊤⊤ [2 tabs] ⊤ [1 tab] in A.M. & ⊤ [1 tab] in P.M.

2. Pt. should be tried on various anti-migraine meds. [medications] if Bellergol is ineffective before pt. should be regarded as unfit for active duty. Meanwhile pt. is fit for [active] duty.

It is doubtful that the Board ever saw this report until after Coleman refused induction. Be that as it may, Coleman appeared on December 8, 1970 for induction. His file does not contain any order to do so.[2] He refused to be inducted.

We recite the foregoing record in part because it shows that, from January 10, 1968 on, Coleman continuously asserted that he was disqualified because of migraine headaches. There is ample evidence in the record that he did have such disqualifying headaches, including letters from two doctors who had had him under treatment for 8 or 10 years and from an employer who was forced to discharge him because of the problem, the finding of the Board's medical advisor, and the June 27, 1969 finding of the AFEES examiner. There is *no* contrary evidence.

We think that a fair construction of the AFEES neurologist's November 30, 1970 report is that he, too, found that Coleman had such headaches, but that he felt that the condition might be relieved by medication. We also conclude that his recommendation—that Coleman

---

1. It is difficult to imagine a more flagrant breach of selective service regulations. We do not rely on it, however, because the board did later reclassify Coleman to I–Y.

2. In this appeal, Coleman makes no point of the lack of such an order.

be considered fit unless the medication proved ineffective, is directly contrary to applicable regulations.

■ The regulations are these: First, Selective Service Regulation, 32 C.F.R. § 1628, which refers, for classification purposes, to the Surgeon General's list of physical disqualifications set forth in Army Regulations 40–501. Thus these are the concern of selective service boards as well as of the Army. *See* United States v. Baray, 9 Cir., 1971, 445 F.2d 949; United States v. Brown, 9 Cir., 1971, 438 F.2d 1115; Briggs v. United States, 9 Cir., 1968, 397 F.2d 370.

Second, Army Regulation 40–501 applies. A.R. 40–501, Ch. 2, Sec. XV, Neurological Disorders, 2–31b(2), lists as cause for rejection "Migraine when frequent and incapacitating." The doctor's finding was that Coleman has "probable Migraine Variant headaches." However, it is apparent that he was not sure whether they are permanently "incapacitating." That is why he recommended Bellergol, and, if that did not work, "various antimigraine meds." It is apparent, however, that he was convinced that, unless the medication worked, Coleman's condition was disqualifying.

This brings into play another section of A.R. 40–501 (Ch. 1, Sec. II, 1–3a) which states:

> "a. *Medically Acceptable. . . .* No individuals will be accepted on a provisional basis subject to the successful treatment or correction of a disqualifying defect."

In spite of this regulation, and of the recommended trial of Bellergol and various other "meds.," Coleman was called for induction just 8 days later. In the meantime, nothing had been done to ascertain whether the recommended treatment had been carried out at all, much less whether it had succeeded.

The attempt to induct Coleman was in direct violation of these regulations. To use a cliche, it stands the second A.R. that we have quoted on its head. The doctor's diagnosis brings Coleman within the regulation, but the doctor's recommendation that "meanwhile" he "is fit for active duty" violates the regulation. His premise is good, but his conclusion is upside down.

Nor can it be said that the regulation is solely for the benefit of the Army. We have no doubt that it benefits the Army: it avoids inducting people who are disqualified unless treated, which would place on the Army the burden of a recruit who is of no use to it unless treated, the burden of treating him, and the risk that the treatment will fail so that he will have to be discharged. The regulation also benefits the registrant. It avoids the unnecessary disruption of his life that would result if he were to be inducted and the treatment were to fail. It permits him to go about his normal affairs while treatment is being assayed. These are no small benefits.

■■ Both the local board and the Army violated these regulations. Under the general principle that an agency is to be held to the terms of its regulations, Service v. Dulles, 1957, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Vitarelli v. Seaton, 1959, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012, the judgment cannot stand.[3]

Reversed. When the mandate goes down, the indictment will be dismissed.

---

3. It is no answer to say that Coleman did not appeal his July 21, 1970 classification of I–A. The operative facts—the November 30, 1970 examination, came later, and changed the situation. Nor is it an answer that Coleman simply refused induction without expressly relying on his physical disqualification. He was disqualified as a matter of law. He cannot be prosecuted for refusing an induction that the system had no right to order.