**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT E. CARPENTER,
                    *Petitioner,*

            v.

NORMAN Y. MINETA, Secretary of
Transportation; JOSEPH H.
BOARDMAN,* Federal Railroad
Administrator; FEDERAL RAILROAD
ADMINISTRATION; DEPARTMENT OF
TRANSPORTATION,
                    *Respondents.*

No. 04-71221

FRA No.
EQAL97-48

OPINION

On Petition for Review of an Order of the
Federal Railroad Administration

Argued and Submitted
November 15, 2005—San Francisco, California

Filed December 29, 2005

Before: Jerome Farris, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Farris

---

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted the current Federal Railroad Administrator for his predecessor as a named respondent.

## COUNSEL

Lawrence M. Mann, Bethesda, Maryland, for the petitioner.

Colleen A. Brennan, Department of Transportation, Washington, DC, for the respondents.

## OPINION

FARRIS, Circuit Judge:

Petitioner challenges the Federal Railroad Administration's decision that he was properly denied certification as a locomotive engineer by his employer-railroad. The FRA Administrator upheld a prior administrative decision that concluded that there was no authority under the administrative dispute resolution regulations to order Petitioner retrained and retested or certified as an engineer. Petitioner disputes this conclusion and also claims that the FRA erred by failing to reach several of his allegations. Last, Petitioner asserts due process violations resulting from the denial of certification and the length of the administrative review. We deny the petition for review.

## I

In 1991 the Federal Railroad Administration, an agency of the Department of Transportation, issued a final rule regarding the training and certification of locomotive engineers pursuant to the Federal Railroad Safety Act of 1970, Pub. L. No. 91-458, 84 Stat. 971 (1970) (FRSA) (codified at 49 U.S.C. § 20101 *et seq.*). This rule, as subsequently amended, is codified in 49 C.F.R. Part 240. With the purpose of ensuring railway safety, these regulations require individual railroads to adopt training and certification programs that meet the minimum requirements of Part 240. 49 C.F.R. §§ 240.1, 240.101. With respect to new engineer candidates, the regulations require a course of training as well as success on both knowledge and skills tests before a railroad may issue a certification. *See* 49 C.F.R. §§ 240.123, 240.125, 240.127, 240.203. The FRA does not actively participate in engineer testing or certification, but administers the regulation through approval and monitoring of individual railroads' programs, including their training and testing regimens. *See* 49 C.F.R. § 240.103; *see also* 49 U.S.C. § 20135(b).

Petitioner Robert E. Carpenter is a conductor for the Burlington Northern and Santa Fe Railway Company. In 1991 he entered Burlington Northern and Santa Fe's FRA approved locomotive engineer training and certification program. To become certified as a locomotive engineer, the railroad requires a minimum average score of 90% on two simulator-based skills tests. In September 1993 Petitioner was administered these skills tests but achieved an aggregate score of 89.76%. A month later Petitioner failed another skills test with a score of 69.34%.[1] As a result of these unsuccessful examinations the railroad denied Petitioner certification as a locomotive engineer.

The FRSA and the FRA's implementing regulations were enacted to improve railway safety, in part by ensuring that locomotives are only operated by qualified and safe engineers. The regulations were not designed to affect the relationships between railway companies and their labor force. *See, e.g.,* 49 U.S.C. § 20110; 49 C.F.R. §§ 240.1(a), 240.5(c)-(f). Despite this focus, Subpart E of 49 C.F.R. Part 240 establishes a limited three-level dispute resolution mechanism in which a person denied engineer certification may obtain a fresh determination by the FRA of whether a railroad's decision was correct. *See* 49 C.F.R. §§ 240.401-240.411. The FRA has delegated responsibility for hearing initial petitions to the Locomotive Engineer Review Board (LERB). 49 C.F.R. § 240.401. A petitioner dissatisfied with an LERB decision has the right to a re-hearing before a "presiding officer" where discovery, testimony, and argument are permitted. 49 C.F.R. §§ 240.407, 240.409. The task of the presiding officer is not to review the LERB decision, but to determine de novo whether a candidate is qualified and whether a railroad's denial of certification was correct. *See* 49 C.F.R. § 240.409(c), (q). An adverse decision of a presiding officer

---

[1]The final test also resulted in an automatic failure for failure of a required element.

may be appealed to the FRA Administrator. 49 C.F.R. § 240.411.

Carpenter petitioned for review of his employer-railroad's decision to deny him engineer certification. In September 1996 the LERB, without deciding whether the denial was correct, ordered Burlington Northern and Santa Fe to comply with 49 C.F.R. § 240.219, which required it to inform Carpenter of the basis of his failing scores and provide him an opportunity to respond. In January 1997, after several letters to Carpenter, Burlington Northern and Santa Fe again denied him certification. Carpenter then filed a second petition with the LERB in July 1997. The LERB decided that the railroad had now satisfied the notification requirement and that the denial of certification was correct.

Carpenter petitioned for re-hearing and in January 1998 the case was opened before a presiding officer. Carpenter claimed that Burlington Northern and Santa Fe's training program and instructors were inadequate, alleged that he was tested on a flawed simulator, sought a declaration that he passed the skills test, and requested that the presiding officer order retraining and retesting or certification. At this point, a long litigation process ensued.[2] Ultimately, in October 2003, the presiding officer dismissed the petition, concluding that he had no authority under the Part 240 regulations to order the remedial

---

[2]In February 1998 the presiding officer established a schedule for clarifying issues and initiating discovery. In March 1998 Carpenter requested discovery of documents and depositions from Burlington Northern and Santa Fe. The railroad was slow in its discovery production and in June 1999 Carpenter moved for sanctions. The presiding officer ordered the railroad to comply. At this point, discovery proceeded without complaint through July 2001. The parties filed a Joint Statement of Issues for Trial in February 2002 and, at the request of the hearing officer, a Joint Statement of Issues for Pre-Trial in March 2002. Briefing of the Pre-Trial issues continued through June 2002, but the FRA failed to file its brief in a timely fashion, delaying the proceedings by one year and one month until May 2003.

relief requested or to consider the adequacy of Burlington Northern and Sante Fe's certification program. Carpenter appealed this decision to the FRA Administrator who, in February 2004, affirmed the presiding officer.

## II

The FRA Administrator's decision to affirm the presiding officer constituted final agency action. *See* 49 C.F.R. § 240.411(e). We have jurisdiction to review this decision pursuant to 28 U.S.C. § 2342(7) and 49 U.S.C. § 20114(c).

We will reverse an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also CHW W. Bay v. Thompson*, 246 F.3d 1218, 1223 (9th Cir. 2001). Despite necessitating a searching review of the record, "the ultimate standard of review is a narrow one." *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 573 (9th Cir. 1998). In reaching a decision, however, we must give substantial deference to an agency's reasonable interpretation of its own regulations. *Providence Health System-Wash. v. Thompson*, 353 F.3d 661, 665 (9th Cir. 2003) ("[T]he agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation."). We review Petitioner's due process claims de novo. *See* 5 U.S.C. § 706(2)(B); *Gonzalez-Julio v. INS*, 34 F.3d 820, 823 (9th Cir. 1994).

## III

Petitioner first asserts that the presiding officer and FRA Administrator are vested with power by the FRSA and the Part 240 dispute resolution regulations to order his employer-railroad to retrain and retest him, or simply to certify him as a locomotive engineer. The FRA insists that its remedial powers are narrow and do not embrace the relief that Carpenter requests, whatever the merits of his petition. Consequently, it argues, the presiding officer and FRA Administrator did not

err in dismissing Carpenter's appeal on this ground. The language and purpose of the regulations and statutory scheme demonstrate the reasonableness of the presiding officer and FRA Administrator's interpretation. We agree that the FRA's remedial powers in the dispute resolution scheme do not permit the relief sought.

**[1]** Under the dispute resolution regulations "[a]ny person who has been denied certification . . . and believes that a railroad incorrectly determined that he or she failed to meet the qualification requirements of this regulation when making the decision to deny . . . certification, may petition the Federal Railroad Administrator to review the railroad's decision." 49 C.F.R. § 240.401(a). Upon de novo re-hearing before a presiding officer, the petitioning party bears the burden of proving "that the railroad's decision to deny certification . . . *was incorrect*." 49 C.F.R. § 240.409(c), (q) (emphasis added). At the close of this proceeding the presiding officer is required to prepare a written decision containing "the findings of fact and conclusions of law, as well as the basis for each concerning all material issues of fact or law presented on the record." 49 C.F.R. § 240.409(t)-(u).

**[2]** The plain language of the dispute resolution regulations makes clear that the presiding officer must decide anew whether a railroad correctly determined that a petitioner failed to meet the qualifications for certification as a locomotive engineer. The regulations are silent, however, as to any powers possessed by the presiding officer to remedy an incorrect railroad determination. Petitioner interprets this silence as a lack of restriction on the otherwise plenary power of the presiding officer to issue remedial orders curing incorrect railroad decisions, including the power to order retraining and retesting, and even the power to order certification as a locomotive engineer. In support of this position, Petitioner cites the FRA's broad enforcement powers under 49 U.S.C. § 20111 and 49 C.F.R. § 240.11 to assess civil penalties, issue compliance and emergency orders, and impose injunctions.

He also points to the LERB's first decision in this case, which ordered the railroad to comply with 49 C.F.R. § 240.219, a procedural requirement that railroads inform an unsuccessful applicant of the reasons for denying certification and provide an opportunity to respond prior to denial, as an example of the FRA exercising remedial powers similar to those he seeks in his second petition. Finally, Petitioner relies heavily on 49 C.F.R. § 240.403(b)(4), which requires a person seeking review by the LERB to explain the "remedial action sought."

[3] Petitioner's arguments are not persuasive. It is a basic principle of administrative law that agencies must act within their regulations, have no powers not expressly granted, and may not exceed their statutory power to issue sanctions or orders. *See, e.g.*, 5 U.S.C. § 558(b) ("A sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency and as authorized by law."); *Defenders of Wildlife v. EPA*, 420 F.3d 946, 959 (9th Cir. 2005) ("Agency decisions may not, of course, be inconsistent with the governing statute." (citing 5 U.S.C. § 706(2)(A))); *Gill v. INS*, 666 F.2d 390, 392 (9th Cir. 1982) (noting the "general principle that an agency is to be held to the terms of its regulations" (quoting *United States v. Coleman*, 478 F.2d 1371, 1374 (9th Cir. 1973)). It is not unreasonable for an agency to interpret regulatory silence as a restraint on remedial power.

[4] Furthermore, while the FRA does have civil enforcement powers, including the power to order compliance with safety regulations, the FRA did not explicitly delegate this power to the presiding officer. *See* 49 C.F.R. §§ 240.11, 240.407-240.409. It is not unreasonable for the FRA to interpret this regulatory structure as limiting its power to order specific remedies in individual dispute resolution cases, especially in light of the statutory and regulatory purposes, discussed *infra*.³ Contrary to Petitioner's urgings, we are

---

³The FRA has also been consistent in declining to provide specific remedies. At oral argument the parties stated that they were unaware of any instance where the agency had granted the relief requested by Petitioner.

unwilling to read the general enforcement authority of an agency that also administers a limited dispute resolution scheme as a grant of unrestricted power to provide any remedial relief in individual cases. This is not to say that it would be unreasonable for the FRA to interpret the regulations as permitting certain orders in individual cases, for example that the LERB can order a railroad to comply with a procedural rule, as it did in Carpenter's first petition, it is just not unreasonable for it to decline to do so.

**[5]** Petitioner next contends that, because he is required to "[e]xplain the nature of the remedial action sought" in an initial petition for review before the LERB, there is authority in the dispute resolution regulations to grant the remedial relief he requests. 49 C.F.R. § 240.403(b)(4). He argues that any interpretation to the contrary is unreasonable because it renders meaningless a clause of the dispute resolution regulations, something that ought to be avoided in statutory and regulatory interpretation. However, the FRA, and LERB as its delegate, do not interpret the regulations so as to eliminate *all* remedial power. For example, the FRA has stated that the LERB has the power to order a railroad to conduct further fact-finding. *See* 58 Fed. Reg. 18,982, 19,001 (Apr. 9, 1993) (asserting that the power of the LERB includes "returning the case to the railroad for additional fact finding"). Additionally, as discussed *supra*, the LERB apparently exercises the power to order compliance with procedural regulations. Where the FRA retains some remedial power, this clause is not superfluous. Whether Petitioner's interpretation of this clause, and its effect on the powers of the FRA, is a reasonable construction of the regulations is not the question. Considering the regulations as a whole, we cannot say that the existence of this single clause is sufficient to render the FRA's interpretation unreasonable and due no deference.

The FRA's interpretation is also supported by its fidelity to the purposes of the FRSA and the Part 240 regulations: arms-length oversight of private railroad certification and railway

safety. Congress required the Secretary of Transportation to adopt regulations for certifying locomotive engineers that would be carried out by approval of individual railroads' training and certification programs. 49 U.S.C. § 20135 (mandating that the certification program "shall be carried out through review and approval of each railroad carrier's operator qualification standards"). The regulations confirm that training and certification is at the discretion of the railroads, subject to initial approval of their program. *See* 49 C.F.R. § 240.101; 49 C.F.R. § 240, App. B (commenting that "[s]ection 240.127 provides a railroad latitude in selecting the design of its own testing and evaluation procedures" and that "[r]ailroads commenting on the proposed rule . . . did convince FRA that they should be given more discretion to formulate the design of their own programs"). If the power to compel retraining and retesting or to certify an engineer were read into the dispute resolution scheme, railroads would be prevented from creating their own remedies for incorrect denials of certification or would lose their power to certify entirely. The FRA's interpretation is more consistent with arms-length regulation because railroads have a chance to craft remedies that better meet their needs and obligations to employees.

**[6]** The principal rationale behind the FRSA and FRA regulations concerning engineer certification is to ensure railway safety. *See* 49 U.S.C. § 20101; 49 C.F.R. § 240.1. While the dispute resolution mechanism provides some protection to railroad workers against arbitrary denials of certification, it cannot be interpreted to do so at the expense of railway safety. Certainly the power to certify a person who does not meet minimum qualifications undermines railway safety.

Even though no remedial relief is available in this limited dispute resolution proceeding, railroad employees wrongly denied engineer certification are not left without any remedy. Both sides agree that an aggrieved railroad employee can seek relief through the Railway Labor Act, a statute addressed spe-

cifically towards labor rather than safety concerns. *See* 45 U.S.C. § 151 *et seq.*; *see also* 54 Fed. Reg. 50890, 50914-15 (explaining that "[r]esolution of some disputes concerning day-to-day administration of a particular railroad's program, including the employment implications of the rule's provisions, would be left to the existing processes for dispute adjustment developed under . . . the Railway Labor Act"). In addition, most railroad employees are protected by collective bargaining agreements, which may provide remedies for wrongful termination or denials of advancement. *Cf.* 49 C.F.R. § 240.5(f) ("Nothing in this part shall be deemed to abridge any additional procedural rights or remedies . . . that are available under a collective bargaining agreement, the Railway Labor Act, or . . . at common law.").

**[7]** The presiding officer and FRA Administrator's interpretation that they have no power to order the relief sought is reasonable and entitled to substantial deference. *See Providence Health System-Wash.*, 353 F.3d at 664.

**IV**

Petitioner next contends that the presiding officer and FRA Administrator erred by refusing to consider his allegations that he received inadequate training and in dismissing his claim without a finding that he had been correctly denied certification. Most of Carpenter's allegations are outside the scope of this limited dispute resolution proceeding. It was not error to ignore them. The record reflects that the agency's findings reached the conclusion that denial of certification was correct based on Petitioner's test scores.

**[8]** A presiding officer is required to "find the *relevant* facts and determine the correct application of this part to those facts" and issue a written decision containing "the findings of fact and conclusions of law, as well as the basis for each concerning all *material* issues of fact or law presented on the record." 49 C.F.R. § 240.409(c), (u) (emphasis added). In

addition, the presiding officer has the power to (1) "regulate the conduct of the hearing for the purpose of achieving a prompt and fair determination of all material issues in controversy" and (2) "limit evidentiary proceedings to any issues of material fact as to which there is a genuine dispute." 49 C.F.R. § 240.409(b)-(c).

**[9]** Petitioner argues that this language requires a presiding officer to resolve all factual disputes presented in the record. This argument is unavailing as the regulations should be given their plain meaning. *See, e.g., Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 698 (9th Cir. 2004). The plain meaning of the regulations is that a presiding officer must find, and apply the regulations to, only those facts that are *relevant* to the proceeding. In so doing, a presiding officer need only consider and explain facts in the record *material* to the relevant factual and legal findings.

**[10]** To determine de novo whether the denial of certification was correct, the relevant issue is whether Petitioner failed to meet minimum qualifications. The only facts in the record material to this finding are those related to his skills tests. His allegations regarding the railroad's training program, instructors, or notification procedures are not relevant. The refusal to address those allegations was not an abuse of discretion.

**[11]** With respect to Petitioner's qualifications, the presiding officer found that "there does not seem to be a dispute as to whether Hearing Petitioner Carpenter did, in fact, fail his simulator tests." Although this is not an explicit statement that Burlington Northern and Sante Fe's denial of certification was correct, that conclusion is supported by the record evidence that Carpenter narrowly missed a passing score on his first examination and failed a second skills examination by a substantial margin. In an attempt to counter the obvious inference from his failing scores, Carpenter has asserted that the simulator on which he was tested was not accurate and, therefore,

his failing scores could not be relied upon to conclude, as the railroad and presiding officer did, that he lacked the minimum skill qualifications. This is merely a bare allegation of simulator inaccuracy and is not relevant in the absence of some showing that different treatment was afforded to other Burlington Northern and Sante Fe engineer candidates. We are satisfied that all relevant facts were found in this case and that there was no error.

## V

Petitioner asserts several due process claims, including that he was deprived of protected property and liberty interests in engineer certification and employment without due process, and that the cumulative length of the administrative proceedings violates due process. We reject the argument.

[12] Due process requires notice and an opportunity to be heard. *See, e.g., Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 570 n.7 (1972). Assuming without deciding that Carpenter has a protected property or liberty interest, he has had the benefit of three levels of administrative review in which he has conducted discovery and presented his claims on the merits but was found to have been correctly denied locomotive engineer certification. Petitioner has exercised to its fullest a dispute resolution process designed for a very limited purpose. Even if the length of the administrative process suggested a due process violation, the agency has reached a final decision and there is no further relief available.

Petition for review DENIED.